# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES L. ORRINGTON, II, D.D.S., P.C., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )    CASE NO. 17-CV-00884 ) |
| SCION DENTAL, INC., *et al.*, | ) ) |
| Defendants. | ) |

## SCION'S MOTION TO DISMISS
## AND INCORPORATED MEMORANDUM OF LAW

Defendant Scion Dental, Inc. ("Scion"), by its attorneys, Quarles & Brady LLP, hereby moves to dismiss the Complaint filed by Plaintiff, James L. Orrington, II, D.D.S. P.C. ("Orrington"), for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Count I of the Complaint purports to allege a violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. This claim must be dismissed because Orrington fails to adequately allege either that the fax at issue is "unsolicited" or that it is "advertising." Counts II - IV allege state law claims, which also must be dismissed. These claims fail under the Illinois doctrine against recovery for *de minimis* violations (*de minimis non curat lex*). These state law claims also fail because Orrington fails to allege various essential elements. Since these deficiencies cannot be saved by amendment, Counts II - IV should be dismissed with prejudice.

## CASE BACKGROUND

Orrington filed its Complaint on February 2, 2017, asserting federal and state law claims—individually, and on behalf of various alleged classes—arising out of a fax sent July 7, 2016. (Dkt. 1). Count I of the Complaint alleges a violation of the federal TCPA. Counts II - IV of the Complaint allege claims under Illinois law: the Illinois Consumer Fraud Act ("ICFA"), *id.*, ¶¶ 36-

51 (Count II); common law conversion, *id.*, ¶¶ 52-65 (Count III); and trespass to chattels, *id.*, ¶¶ 66-78 (Count IV). [1]

The fax at issue is attached as Exhibit A to the Complaint. (Compl., ¶ 9 & Ex. A). No other faxes are attached to or described in the Complaint. Orrington alleges that Scion sent Exhibit A or caused it to be sent, and that Exhibit A failed to include an opt-out notice (*id.* ¶¶ 22-27). Orrington alleges that Scion sent "similar unsolicited fax advertisements" to at least forty other persons in Illinois (*id.* ¶ 19). Orrington seeks to certify a class of similarly situated persons on the federal TCPA claim and additional classes in Illinois on the state law claims (*id.* ¶¶ 28, 45, 59, 72).

## **LEGAL STANDARD**

On this motion, the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in the plaintiff's favor. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true[,] . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Conclusory allegations do not suffice:

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (internal citations omitted). Under this standard, the complaint "must 'state a claim to relief that is plausible on its face,' which in turn requires sufficient factual allegations to permit the court to draw a reasonable inference that the defendant is liable for the

---

[1] On February 28, 2017, Scion filed an uncontested motion for an extension of time to respond. (Dkt. 12, 14). The motion was granted, extending Scion's answer or response deadline to April 6, 2017. (Dkt. 15).

misconduct alleged." *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556, 570). "Purely legal conclusions are insufficient," and "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, the plaintiff must allege "'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "'[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" *Id.* (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). Dismissal with prejudice is appropriate when the deficiencies in a pleading cannot be cured by amendment. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (leave to amend need not be granted "if it is clear that any amendment would be futile"); *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) (proposed repleading would be futile if claims as pleaded show "inability to survive a motion to dismiss").

Finally, where a plaintiff has attached material to the Complaint—here, the allegedly offending fax transmission—the content of the fax itself is also before the Court. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); *Moranski v. GMC*, 433 F.3d 537, 539 (7th Cir. 2005) (documents attached to the complaint are part of the complaint); *Jackson v. Reliant Services Group, LLC*, 2016 WL 1073073 (N.D. Ill. Mar. 18, 2016), *2 ("the court can consider the Fax itself [on a motion to dismiss] since the Fax was attached as an exhibit to the complaint") (citation omitted).

# ARGUMENT

## I. COUNT I, ORRINGTON'S TCPA ALLEGATION, MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

Count I is premised on 47 U.S.C. § 227(b)(1)(C), a subsection of the TCPA that provides, in relevant part:

> (b) Restrictions on use of automated telephone equipment.
> (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States— […]
>
> (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an *unsolicited advertisement* . . .

Complaint, ¶ 22; 47 U.S.C. § 227(b)(1)(C) (emphasis added). Here, the Complaint fails to state a claim because it does not allege sufficiently that Exhibit A to the Complaint is *unsolicited*. On its face, moreover, this fax is not an *advertisement*, and the Complaint also fails to adequately allege that it is.

### A. *The Complaint fails to allege that the fax at issue was "unsolicited"— i.e., sent without Orrington's prior express consent.*

Under the TCPA, an advertisement is "unsolicited" if it is "transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5); *see also* 47 C.F.R. § 64.1200(f)(15) (same). Here, the Complaint makes the conclusory statement that the fax in Exhibit A was "unsolicited" (Compl. ¶ 9), but does not allege *facts* sufficient to support this allegation.

Orrington has sued Scion, but Exhibit A—at the very top of the fax—identifies "UnitedHealthcare, A UnitedHealthGroup Company" ("UHC"). Scion is listed only at the bottom of the fax, where it is identified as available to answer questions submitted via email. (*Id.*) In what can only be seen as a deliberate omission, UHC is never mentioned in the Complaint. In particular,

Orrington never alleges either (1) that it has no business relationship with UHC, or (2) that it never gave UHC consent to send it faxes. *See id.*, ¶ 15 (alleging both points as to Scion only, but with no mention of UHC). This is a critical failure because without these allegations, Orrington's claim that the fax was "unsolicited" is incomplete: if Orrington consented to receive faxes from UHC, then by definition the fax was not "unsolicited." Given this obvious deficiency, the allegations in the Complaint fail to raise Orrington's right to relief above the speculative level.[2] The Complaint, without more, does not actually support the inference that Exhibit A was *unsolicited*.

Until very recently, Orrington's omission in this regard may have been excused in part, or at least explained, by its reliance on the fact the fax appears to lack an opt-out notice. *See* 47 C.F.R. § 64.1200(a)(4)(iv) (requiring opt-out notice even for fax advertisements "sent to a recipient that has provided prior express invitation or permission to the sender"); Compl. ¶ 18 (citing this requirement). But as of last week, the opt-out notice is no longer dispositive. In *Bais Yaakov of Spring Valley v. FCC*, --- F.3d ---, 2017 WL 1192909 (D.C. Cir. Mar. 31, 2017), the U.S. Court of Appeals for the District of Columbia Circuit ruled that the Federal Communications Commission (FCC) exceeded its statutory authority in requiring opt-out notices on faxes sent with the recipient's prior express consent. Thus it is no longer enough for Orrington to rest on the lack of an opt-out notice in the fax at issue; it must affirmatively allege that it did not provide prior consent to Scion *or* UHC. It has failed to do this, and therefore, has failed to plausibly allege the sending of an "unsolicited" fax.[3]

---

[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citations omitted) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557).

[3] The D.C. Circuit's decision in *Bais Yaakov* also has fatal implications for class certification under Rule 23. Orrington's TCPA class definition (Compl. ¶ 28) is premised solely on lack of an opt-out notice and makes no distinction between consenting and non-consenting recipients. Post-*Bais Yaakov*, this class definition is deficient on its face, and Scion will move to strike it if Count I survives this motion to dismiss.

### B. The Complaint also fails because the fax at issue is not "advertising" under the TCPA and Orrington fails to allege otherwise.

Count I also fails to state a claim because the fax at issue—both on its face and based on the Complaint's allegations—does not constitute "advertising." The TCPA defines an "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services . . ." 47 U.S.C. § 227(a)(5); *see also* 47 C.F.R. § 64.1200(f)(15) (same).

In a preamble to enforcement rules issued in 2006, the FCC established two guideposts for determining whether a communication constitutes an "advertisement" within the meaning of the TCPA. *See* 71 F.R. 25,967 *et seq.* ("Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991"), 2006 WL 1151584. First, "messages whose purpose is to *facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into* with the sender are *not* advertisements for purposes of the TCPA's facsimile advertising rules." *Id.* at 25,972 (emphasis added). "Similarly, messages containing account balance information or other type of account statement which, for instance, *notify the recipient of a change in terms or features* regarding an account, subscription, membership, loan or comparable *ongoing relationship*, in which the recipient has already purchased or *is currently using the facsimile sender's product or service*, is *not* an advertisement." *Id.* (emphasis added).

Second, facsimile messages that promote goods or services at no cost are not *categorically* excluded from the definition of "unsolicited advertisement," but this is because, "in many instances, 'free' seminars serve as a *pretext* to advertise commercial products and services." *Id.* at 25,973 (emphasis added). Therefore, as this Court itself has recognized, **where the "complaint fails to allege that the seminar was a pretext to an advertisement, courts have found the fax does not violate the TCPA."** *North Suburban Chiropractic Clinic, Ltd. v. Merck & Co.*, No. 13-C-3113, 2013 WL 5170754, *3 (N.D. Ill. Sept. 13, 2013) (emphasis added) (citing *Phillips*

6

44987266.1

*Randolph Enters., LLC v. Adler–Weiner Research Chicago, Inc*., 526 F.Supp.2d 851 (N.D. Ill. 2007)). *See also Physicians HealthSource, supra*, 2013 WL 5299134, *2 (**"The plaintiff alleges that the facsimile is an advertisement promoting defendants' services. However, the text of the facsimile does not support this conclusory allegation, and the plaintiff pleads no facts as the basis for the conclusion"**) (emphasis added) (granting motion to dismiss).

Many courts, applying these principles, have granted motions to dismiss TCPA allegations where the complaint accompanying a fax failed to sufficiently allege that the fax was an advertisement. *See, e.g., N.B. Indus., Inc. v. Wells Fargo & Co*., 465 F. App'x 640 (9th Cir. 2012) (fax inviting nominations for business leadership award not "unsolicited advertisement," despite "incidental" advertising on face of fax); *Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Research Inst., Inc*., 222 F. App'x 530 (8th Cir. 2007) (fax announcing clinical drug trial was not advertising); *Physicians HealthSource, Inc. v. MultiPlan Servs. Corp*., 2013 WL 5299134 (D. Mass. Sept. 18, 2013) (fax transmitting information about preferred provider network to which doctor belonged was not advertising); *Jackson v. Reliant Servs. Grp., LLC*, 2016 WL 1073073 (N.D. Ill. Mar. 18, 2016) (fax referencing existing business relationship was not advertising); *Phillips Randolph Enters., LLC*, *supra* (fax inviting participation in research discussion was not advertising); *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc*., 2017 WL 783499 (E.D. Mich. Mar. 1, 2017) (fax seeking verification of patient protected health information was not advertising) (appeal docketed); *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 2016 WL 5799301 (S.D.W. Va. Sept. 30, 2016) (fax offering free Physicians' Desk Reference eBook was not advertising) (appeal docketed); *ARcare v. IMS Health, Inc*., 2016 WL 4967810 (E.D. Ark. Sept. 15, 2016) (fax seeking verification for fax number was not advertising); *Physicians Healthsource, Inc. v. Janssen Pharm., Inc*., 2013 WL 486207 (D. N.J. Feb. 6, 2013) (fax announcing insurance

7

reclassification of particular drug was not advertising); *Lutz Appellate Servs., Inc. v. Curry*, 859 F. Supp. 180 (E.D. Pa. 1994) (fax announcing existence of job openings was not advertising).

Here—once again taking all of the facts pleaded by Orrington as true, and drawing all reasonable inferences in its favor—Exhibit A to the Complaint is not an "advertisement" (unsolicited or otherwise). The Complaint, too, fails to allege that Scion's motive in sending this fax was to advertise. On its face, the fax is not "advertising." It offers free "training" to "participants" in a "provider web portal." (Compl., Ex. A). On its face, it is directed to dental providers in UHC's network who are using the provider web portal supported by Scion, inviting them to "learn about the new updates" to this portal via an "online meeting." *Id.* (emphasis added). The concept of "new updates" would be meaningless to providers not already using the portal. As is apparent on its face, then, the purpose of the fax is to "notify the recipient of a change in terms or features regarding an . . . ongoing relationship, in which the recipient . . . is currently using the facsimile sender's product or service." 71 F.R. 25,972. The fax, in other words, seeks to "facilitate . . . a commercial transaction that the recipient has previously agreed to enter into with the sender." *Id.* Under FCC guidance, this means the fax is by definition *not* an "unsolicited advertisement."[4]

On its face, moreover, Exhibit A offers free information. While the FCC recognizes that faxes offering free goods or services may be unsolicited advertising if "they serve as a pretext to advertise commercial products and services," 71 F.R. 25,973, the Complaint here does not allege that Exhibit A was pretextual. Exhibit A is not advertising simply because it identifies UHC and Scion. 71 F.R. 25,973 ("the Commission concludes that a reference to a commercial entity does not by itself make a message a commercial message"). Orrington asserts that Scion "derived

---

[4] This point is analytically distinct from the familiar "established business relationship" exemption under the TCPA. *See* 47 U.S.C. § 227(b)(1)(C)(i) (exempting unsolicited advertisements from a sender with an established business relationship with the recipient, subject to other conditions). The point here is not that the fax is an *exempt* unsolicited advertisement, but that by definition, it is not an "unsolicited advertisement" *at all*.

8
44987266.1

economic benefit from the sending of the fax" (Compl. ¶ 12), but that allegation is wholly conclusory and insufficient. One could say that about any fax that mentions a commercial entity, and the allegation is made without explanation and without supporting *facts*. Meanwhile, the allegation is contradicted by the fax itself, which (again) offers *free* training to UHC's existing providers and displays no apparent nexus to economic benefit.

Orrington's failure to allege commercial pretext distinguishes this case from *North Suburban, supra*, where this Court denied the motion to dismiss a junk fax claim. In *North Suburban*, Merck developed and distributed prescription drugs and services, and sent a fax to the clinic inviting it to a webinar for "health care professionals only." *Id.* at *1. The professionals at the clinic were not necessarily already in business with Merck. *Id.* On its face, the fax did not offer products and services commercially available from Merck; however, recipients were required to register for the seminar by visiting Merck's website, which in turn required them to provide their contact information and agree that Merck could contact them with product information, special offers, information about Merck, and more. *Id.* at *2. In *North Suburban*, too, the complaint expressly alleged that the seminar was a commercial pretext because Merck intended to market its products and services there. *Id.* at *3 ("the *Phillips Randolph* court placed emphasis on the fact that the defendant had not alleged 'that the fax was a pretext to an advertisement' . . . In the instant case, however, unlike *Phillips Randolph*, Plaintiff alleges that the fax was a pretext to an advertisement and that the Defendant utilized the webcast to advertise its products or services"). Citing this distinction, this Court denied Merck's motion to dismiss. *Id.* at *4.

Here, the fax can be readily distinguished from the fax in *North Suburban*. Exhibit A links only to a GoToMeeting session, not to Scion's website. (Compl., Ex. A). It states expressly that participants who wish to "join the online meeting" can simply show up: "there's no need to register in advance." *Id.* It does not ask for contact information of any sort from the recipient. *Id.* In its

9

Complaint, moreover, Orrington does not allege that Scion uses the online meeting to advertise its products or services. Orrington attempts to make relevant a link to Scion's website by appending a page from that website as Exhibit B to the Complaint, asserting that Scion "seeks to recruit dentists to enter into business relationships (*id.,* ¶ 13), but this falls far short of providing the necessary link because (1) the fax does not identify Scion's website or provide a link; (2) the Complaint itself does not allege a connection between Exhibits A and B; and (3) no connection between Exhibits A and B exists, or can be derived, from either the fax or the Complaint.

In summary, then, Count I fails to state a claim. Exhibit A offers no commercial product or service for sale, only free information on updates to "providers" already participating in UHC's provider portal. The Complaint fails to allege that this fax was a pretext for any commercial advertising. What Orrington offers is no more than a bare bones legal conclusion, one that fails to raise the right to relief "above the speculative level." *Twombly*, 550 U.S. 544, 555. *See also Janssen Pharm.*, 2013 WL 486207 at *5 (rejecting plaintiff's position "that the Court should inquire as to whether Defendants would obtain an ancillary commercial benefit as a result of sending the fax": "the inquiry under the TCPA is whether the content of the message is commercial, not what predictions can be made about future economic benefits. Moreover, the link between Defendants receiving any commercial benefit from sending this type of information . . . is too tenuous for the Court to speculate"); *Physicians HealthSource, supra*, 2013 WL 5299134, *2 ("Based on the four corners of the facsimile, there is no overt advertising by MultiPlan, nor is there any enticement that could be construed as a pretext to advertise commercial products or services . . .").

10
44987266.1

Complaint, moreover, Orrington does not allege that Scion uses the online meeting to advertise its products or services. Orrington attempts to make relevant a link to Scion's website by appending a page from that website as Exhibit B to the Complaint, asserting that Scion "seeks to recruit dentists to enter into business relationships (*id.,* ¶ 13), but this falls far short of providing the necessary link because (1) the fax does not identify Scion's website or provide a link; (2) the Complaint itself does not allege a connection between Exhibits A and B; and (3) no connection between Exhibits A and B exists, or can be derived, from either the fax or the Complaint.

In summary, then, Count I fails to state a claim. Exhibit A offers no commercial product or service for sale, only free information on updates to "providers" already participating in UHC's provider portal. The Complaint fails to allege that this fax was a pretext for any commercial advertising. What Orrington offers is no more than a bare bones legal conclusion, one that fails to raise the right to relief "above the speculative level." *Twombly*, 550 U.S. 544, 555. *See also Janssen Pharm.*, 2013 WL 486207 at *5 (rejecting plaintiff's position "that the Court should inquire as to whether Defendants would obtain an ancillary commercial benefit as a result of sending the fax": "the inquiry under the TCPA is whether the content of the message is commercial, not what predictions can be made about future economic benefits. Moreover, the link between Defendants receiving any commercial benefit from sending this type of information . . . is too tenuous for the Court to speculate"); *Physicians HealthSource, supra*, 2013 WL 5299134, *2 ("Based on the four corners of the facsimile, there is no overt advertising by MultiPlan, nor is there any enticement that could be construed as a pretext to advertise commercial products or services . . .").

## II. COUNTS II-IV, PLAINTIFF'S STATE LAW CLAIMS, ARE BARRED BY THE DOCTRINE OF *DE MINIMIS NON CURAT LEX*

The doctrine of *de minimis non curat lex* ("the law does not concern itself with trifles") bars the "category of claims in which the plaintiff has suffered no more than negligible damages from the beginning." *See, e.g., Savanna Group, Inc. v. Truan*, 2011 WL 703622 (N.D. Ill. Feb. 22, 2011) (dismissing a conversion claim under the *de minimis* doctrine because the loss of paper and toner from an unsolicited fax was only trivial damage); *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F.Supp.2d 610, 615 (N.D. Ill. 2009) (same). Indeed, as the court in *Stonecrafters* observed, "'the ancient maxim *de minimis non curat lex* might well have been coined' for the occasion in which a conversion claim is brought based solely on the loss of paper and toner consumed during the generation of a one-page unsolicited fax . . ." *Id.*, at 613 (quoting *Rossario's Fine Jewelry, Inc. v. Paddocks Publications, Inc.*, 443 F.Supp.2d 976, 980 (N.D. Ill. 2006)). This is "precisely the type of damage claim that the *de minimis* doctrine is intended to bar." *Brodsky v. HumanaDental Ins. Co.*, 2014 WL 2780089, at *10 (N.D. Ill. June 12, 2014), opinion modified on denial of reconsideration, 2014 WL 4813147 (N.D. Ill. Sept. 29, 2014).

Here, Orrington's Illinois Consumer Fraud Act and conversion claims (Counts II and III) are based on alleged damages (loss of paper and ink or toner) from a single, one-page fax. (Compl. ¶¶ 40, 55). Orrington's trespass to chattels claim (Count IV) fails to specify any damage (*id.*, ¶ 70), but such damages are necessarily limited to the same lone fax. All of these claims are barred by the doctrine of *de minimis non curat lex*. *See Sturdy v. Medtrak Educ. Servs. LLC*, 2014 WL 2727200, at *5 (C.D. Ill. June 16, 2014) (dismissing with prejudice identical state law claims, relating to an allegedly unsolicited advertising fax, on *de minimis* and related grounds; case filed by same plaintiff's counsel); *G. Neil Garrett, D.D.S., P.C. v. New Albertson's, Inc.*, 2014 WL

2198242, at *5 (N.D. Ill. May 27, 2014) ("Plaintiff's conversion claim is insufficiently stated as *de minimis*, so its trespass to chattels claim fails for the same reason").

This analysis is in no way altered by Orrington's allegation that "[d]iscovery *may* reveal the transmission of additional faxes as well." (Compl. at ¶ 10) (emphasis added). Orrington does not allege receiving any other faxes, and cannot evade *de minimis* status by mere speculation. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . ."). Nor can Orrington argue that damages are more than *de minimis* when the putative class is viewed as a whole, as Illinois law does not allow aggregation of alleged damages without first showing that the proposed class representative has a valid cause of action on his own. *G.M. Sign, Inc. v. Elm Street Chiropractic, Ltd.*, 871 F.Supp.2d 763, 768 (N.D. Ill. 2012) ("[t]he loss of a single sheet of paper and a minuscule amount of toner cannot be aggregated, and is too trivial an injury to amount to an actionable conversion"). This means that a plaintiff like Orrington cannot move beyond *de minimis* damages by combining its loss with any members of the possible putative class. *Savanna Group*, 2011 WL 703622, at *3; *Brodsky*, 2014 WL 2780089, at *10.

For these reasons, all of Orrington's state law claims are barred by the doctrine of *de minimis non curat lex*, and must be dismissed with prejudice because no amendment can cure the identified deficiencies. *See Bogie*, 705 F.3d at 608; *Garcia*, 24 F.3d at 970.

### III. INDEPENDENTLY, COUNTS II - IV MUST BE DISMISSED FOR FAILURE TO PLEAD ALL OF THEIR ESSENTIAL ELEMENTS

#### A. Count II must be dismissed because the alleged conduct does not rise to the requisite level of unfairness.

A plaintiff claiming damages under the Illinois Consumer Fraud Act must allege: (1) an unfair practice by the defendant; (2) the defendant's intent that the plaintiff rely on the unfair practice; and (3) that the unfair practice occurred in the course of conduct involving commerce. *G.M. Sign*, 871 F.Supp.2d at 769 (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996)).

Here, Orrington's Complaint fails to sufficiently allege the element of "unfairness." (Compl. ¶¶ 37-39). Three factors are examined and weighed when assessing the alleged unfairness of a business practice. The first factor is whether the practice offends public policy. *Rossario's Fine Jewelry*, 443 F.Supp.2d at 978 (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960-61 (Ill. 2002) (internal citations omitted)); *G.M. Sign*, 871 F.Supp.2d at 769. The second factor is whether the practice is immoral, unethical, oppressive, or unscrupulous. *Id.* The third factor is whether the practice causes substantial injury to consumers. *Id.*

In *Rossario's Fine Jewelry*, claims for common law conversion, violation of the ICFA, and violation of the TCPA were predicated upon the same allegation made here: the sending of an unsolicited fax. *Rossario's Fine Jewelry*, 443 F.Supp.2d at 977. The court dismissed the ICFA claim because regardless of the first, "public policy" factor, "the patent inapplicability of the other two factors to [the] one-page fax advertisement heavily outweighs that one element in the [unfairness] evaluation called for by *Robinson*." *Id.* at 979. Dismissal was proper "where, as here, the totality of the Complaint's allegations as to the facts and circumstances—which have indeed been credited—so directly negate that characterization as a matter of law." *Id.* (citing *N. Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995); *Steidl v. Gramley*, 151 F.3d 739, 741 (7th Cir. 1998)).

Likewise, in *G.M. Sign*, a one-page unsolicited fax was sent to a plaintiff, who in turn filed a three-count class action complaint alleging violation of the TCPA, common law conversion of paper, toner, and employees' time, and violation of the ICFA. 871 F.Supp.2d at 765-66. The court dismissed the complaint *with prejudice*. *Id.* at 766. In dismissing, the court performed the ICFA analysis set forth in *Robinson* and concluded that neither the second factor nor the third factor of the unfairness test could be met. *Id.* at 669-70. Indeed, as to the third *Robinson* factor, the court found that "[t]he costs associated with the transmission and printing of a single fax advertisement cannot be said to cause significant harm." *Id.* (citing *G.M. Sign, Inc. v. Stergo*, 681 F.Supp.2d 929,

13

936 (N.D. Ill. 2009); *Stonecrafters*, 633 F.Supp.2d at 617; and *W. Ry. Devices Corp. v. Lusida Rubber Prods., Inc.*, 2006 WL 1697119, at *5 (N.D. Ill. June 13, 2006)).

Finally, in *Sturdy*, *supra*, the district court dismissed *with prejudice* a nearly identical ICFA claim filed by Orrington's counsel here, again on the basis of an unsolicited fax advertisement. Consistent with *Rossario's Fine Jewelry*, *G.M. Sign*, and *Stonecrafters*, the court found that only the first *Robinson* factor arguably applied, requiring dismissal. 2014 WL 2727200 at *3-4.

> **B. Count III must be dismissed with prejudice because Orrington fails to allege that it made any demand for its property, and because the conversion claim is surplusage in light of the TCPA claim.**

A claim for conversion under Illinois law requires the following elements: "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's [property]; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *G.M. Sign, Inc.*, 871 F.Supp.2d at 767 (quoting *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93 (Ill. App. Ct. 1990)).

Here, Orrington has failed to allege any demand for possession of the property, an essential element of an Illinois conversion claim. In addition, Orrington's conversion claim does not allege losses distinct from its TCPA claim, so its cause of action for conversion is mere surplusage. *Savanna Group*, 2011 WL 703622, at *3 (dismissing conversion claim as surplusage to federal claim) (citing *Rossario's Fine Jewelry*, 443 F.Supp.2d at 978, 980).

### C. Count IV must also be dismissed because Orrington fails to allege facts permitting the reasonable inference that it was damaged.

To claim trespass to chattels, the plaintiff must allege that the defendant's actions interfered with the use of chattel in the plaintiff's possession and that this interference caused the plaintiff damages. *Lewis v. Weis*, 2012 WL 45242, at *3 (N.D. Ill. Jan. 5, 2012). Orrington alleges that Scion interfered with its use of fax receiving equipment (Compl. ¶ 68), yet it fails to allege how it was damaged by this alleged interference. Orrington alleges that "Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes" (*id.,* ¶ 70), but this statement simply parrots a legal conclusion. *Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do").

### CONCLUSION

For the reasons set forth above, Orrington's Complaint must be dismissed in its entirety. Count I fails to state a claim because the fax, Exhibit A to the Complaint, is not an "unsolicited advertisement"—either on its face, or based on the allegations made in Orrington's Complaint. Counts II - IV, Orrington's state law claims, must be dismissed based on the well-established doctrine of *de minimis non curat lex*, and also because these counts fail to plead additional and essential elements of the claims asserted.

DATE: April 6, 2017.

                                                    SCION DENTAL, INC.

                                                  By: */s/ Steven v. Hunter*
                                                        *One of Its Attorneys*

Steven V. Hunter (ARDC #6277695)
Quarles & Brady LLP
300 North LaSalle Street, Suite 4000
Chicago, Illinois 60654
Telephone: (312) 715-5000
Facsimile: (312) 715-5155
Steven.Hunter@quarles.com

44987266.1