**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES L ORRINGTON, II, D.D.S., P.C.,<br>on behalf of plaintiff and<br>the class members defined herein, | ) ) ) ) | |
| Plaintiff, | ) ) | 17-CV-00884 |
| v. | ) ) | |
| SCION DENTAL, INC.,<br>and JOHN DOES 1-10, | ) ) ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT – CLASS ACTION**

**MATTERS COMMON TO MULTIPLE COUNTS**

**INTRODUCTION**

1.      Plaintiff James L. Orrington, II, D.D.S., P.C., brings this action to secure redress for the actions of defendant Scion Dental, Inc., in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"),  the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law.

2.      The TCPA expressly prohibits unsolicited fax advertising.  Unsolicited fax advertising damages the recipients.  The recipient is deprived of its paper and ink or toner and the use of its fax machine.  The recipient also wastes valuable time it would have spent on something else.  Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of

1

the unsolicited faxes.

## PARTIES

3.      Plaintiff  James L. Orrington, II, D.D.S., P.C., is a dental provider organized as an Illinois corporation with offices in the Northern District of Illinois, where it maintains telephone facsimile equipment.

4.      Defendant Scion Dental, Inc., is a Delaware corporation with its principal office at N92W14612 Anthony Avenue, Menomonee Falls, Wisconsin 53051.  Its registered agent and office is Registered Agent Solutions, Inc., 901 S Whitney Way, Madison, Wisconsin 53711.

5.      John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below.  Plaintiff does not know who they are.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. §§1331 and 1367.   *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012);  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446  (7th Cir. 2005).

7.      Personal jurisdiction exists under 735 ILCS 5/2-209, in that defendants:

   a.      Have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.

   b.      Have transacted and done business in Illinois.

8.       Venue in this District is proper for the same reason.

## FACTS

9.      On July 7, 2016, James L. Orrington, II, D.D.S., P.C., received the unsolicited fax advertisement attached as Exhibit A on its  facsimile machine.

10. Discovery may reveal the transmission of additional faxes as well.

11. Defendant Scion Dental, Inc., is responsible for sending or causing the sending of the fax.

12. The purpose of the fax is to induce the recipient to enter into a business relationship with Scion Dental, Inc., which Scion Dental, Inc., expects to be mutually profitable for itself and the recipient.

13. Defendant Scion Dental, Inc., its parent Skygen USA, and affiliated entities are engaged in the business of administering health benefit plans and providing electronic communication services between (a) medical providers, such as plaintiff, (b) entities that pay for medical services, such as insurance companies, benefit plans, and government agencies, and (c) patients. They also provide related products and services, such as a database whereby patients can locate a medical provider.

14. Scion Dental, Inc., describes its business activities on its web site:

Scion Dental excels in every aspect of provider network management, from network build to ongoing network maintenance. Our success stems from our understanding of the business of dentistry and our attention to management of provider relationships. Using multiple recruiting techniques, we conduct the customized network build so our clients own and retain their own network forever. Our track record, which includes Medicaid provider enrollment, demonstrates our ability to consistently deliver fully compliant provider networks, on time.

With integrated provider credentialing and contracting management tools built into our software platform, our clients can easily maintain multiple provider networks with specific reimbursement rules for each.

(http://sciondental.com/sd/Our-Solutions/Provider-Network-Management.htm)

15. Scion Dental, Inc., also states on its web site:

Automation of dental benefit claims processing is not just our core competency. It's also

3

the driver for significant cost reduction and competitive advantage for our clients. With the Enterprise System, we have transformed dental claims processing into a paperless workflow, and automated 100% of all claim edits, pricing, and benefit determination computations using industry-leading clinical algorithms, flexible authorization requirements and dental-specific edits. Scion Dental delivers 24/7 access to claims processing as well as operational transparency to enable clients to dramatically reduce the cost of delivering dental benefits.

We streamline claims processing for providers and our clients through the use of web-based portal technology. Our Provider Web Portal allows providers to enter and manage claims and authorizations, submit electronic documents, check the processing status of claims and authorizations, view and print remittance advices and other documents posted by the insurance company or network and verify patient eligibility and treatment history by any known provider. By enabling providers to manage their administrative tasks electronically, we improve the speed and accuracy of claims processing and lower costs for both providers and our clients.

(http://sciondental.com/sd/Our-Solutions/Automated-Claims-Processing.htm)

16.    All of these services and products are provided by Scion Dental, Inc., for profit on a commercial basis.

17.    In order to make more money, Scion Dental, Inc., must offer its services to and sign up as many medical providers as possible ("network build"), and induce them to use its latest communications technologies ("Automation of dental benefit claims processing," "improve the speed and accuracy of claims processing and lower costs").

18.    Scion Dental, Inc., claims to have "industry-leading functionality, especially in the area of provider and member self-service web portals. These portals will allow [the benefit provider] to offer new tools, and a remarkably user-friendly experience, to both its members and its providers." (http://skygenusabenefitmanagement.com/sbm/Knowledge-Center/Press-Releases/Scion-Dental-Awarded-Maryland-Medicaid-Contract.htm)

19.    Scion Dental, Inc., therefore seeks to recruit dentists to enter into business

relationships. (Exhibit B)

20. Plaintiff had no prior business relationship with Scion Dental, Inc.

21. The fax at issue (Exhibit A) promoted a webinar at which Scion Dental, Inc., intended to introduce its services to dental practices such as plaintiff, sign them up (the key part of Scion's "network build" service), and induce them to make use of its latest technology (Scion's "[a]utomation of dental benefit claims processing" and "improv[ing] the speed and accuracy of claims processing and lower costs" services), described above. The webinar thus promoted the commercial availability and quality of Scion's products and services.

22. A medical provider who signs up with Scion Dental, Inc., both gives and receives consideration for doing so.

23. Benefits to the provider from a relationship with Scion Dental, Inc., include access to more patients, prompt processing of claims, the ability to quickly inform patients whether their dental treatment will be covered, and reduction in paperwork.

24. In exchange, the medical provider agrees to be subject to cost containment practices by Scion, i.e., fewer services are authorized for each patient, and the provider may be paid less for services provided, than would otherwise be the case. Scion Dental, Inc., explains on its website:

> Administrative costs, such as processing claims, account for only 2% to 4% of the total cost of any program. The real savings opportunity comes from effectively managing benefit costs.

(http://sciondental.com/sd/Our-Solutions/Benefit-Management.htm)

25. Faxes that are intended to induce the recipient to enter into business relationships or which make known to medical providers the availability of products and services that are sold

by the faxer for profit are "advertisements" as defined in 47 U.S.C. §227 regardless of whether direct payment to the sender comes from (a) the medical provider, (b) the patient, or (c) an insurance company, benefits plan, or governmental agency.

26.     For example, faxes sent to medical providers for the purpose of promoting drugs or medical devices are "advertisements" even though the medical provider generally does not pay for or acquire the drugs or devices, but authorizes their acquisition by a patient with payment coming from an insurance company, benefits plan, or governmental agency.  *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 847 F.3d 92 (2d Cir. 2017) (fax promoting free "dinner meeting" discussing two conditions for which defendant was developing drugs and sent to doctors "whom Boehringer would presumably hope to persuade to prescribe its drugs to patients" subject to TCPA; "at the pleading stage, where it is alleged that a firm sent an unsolicited fax promoting a free seminar discussing a subject that relates to the firm's products or services, there is a plausible conclusion that the fax had the commercial purpose of promoting those products or services. Businesses are always eager to promote their wares and usually do not fund presentations for no business purpose. The defendant can rebut such an inference by showing that it did not or would not advertise its products or services at the seminar, but only after discovery");  *Physicians  Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.,*12cv2132, 2015 WL 3827579 (D.N.J., June 19, 2015), recons. denied, 2015 WL 5164821 (D.N.J. Sept. 2, 2015); *North Suburban Chiropractic Clinic, Ltd. v. Merck & Co.,* 13 C 3113, 2013 WL 5170754, *3 (N.D.Ill., Sept. 13, 2013) (fax by drug manufacturer advertised seminar for physicians at which its products would be promoted; "The fact that Defendant's fax was directed only to health care professionals does not affect its commercial nature one way or

6

another"); *Arkin v. Innocutis Holdings, LLC,* 8:16cv0321, 2016 WL 3042483, *2-3 (M.D. Fla.

May 26, 2016) ("a fax about a prescription drug that encourages a doctor to prescribe it can

constitute an advertisement, notwithstanding that the price is not listed and the doctor is not

encouraged to buy the drug"); *St. Louis Heart Center, Inc., v. Forest Pharmaceuticals, Inc.,*

4:12cv2224, 2013 WL 1076540, *3-4 (E.D.Mo., March 13, 2013) (fax was sent by manufacturer

of hypertension drug and advertised free seminar involving "medical discussion regarding the

treatment of hypertension" using its drug); *Dr. Stuart T. Zaller, LLC v. Pharmawest Pharmacy,*

*Ltd.,* 1lcv789, 2011WL5508912 (D.Md., Nov. 8, 2011); *St. Louis Heart Center, Inc. v.*

*Caremark, L.L.C.,* 4:12cv2151, 2013 WL 9988795, *3 (E.D.Mo., April 19, 2013) (fact that fax

sent to doctor did not "offer Plaintiff any property, goods, or services for sale", but instead

promoted a program to encourage patients to purchase drugs, did not make it something other

than advertising); *Physicians Healthsource, Inc. v. Salix Pharmaceuticals, Inc.,* 5:15cv36, 2015

WL 4713266, *2 (E.D.N.C., Aug. 7, 2015) ("Salix has a direct pecuniary interest in healthcare

professionals appropriately prescribing Apriso to their patients"); *Elan Pharmaceutical Research*

*Corp. v. Employers Ins. of Wausau,* 144 F.3d 1372, 1378-9 and n. 11 (11th Cir. 1998)

("Communications intended to induce the doctors to prescribe a pharmaceutical manufacturer's

drugs for the doctors' patients would constitute 'advertising' even though the communications

were never observed by the ultimate consumers, the patients ... [just as] a cereal manufacturer's

Saturday morning commercials are 'advertising' even though they are aimed at children, not their

parents who actually buy the product"); see *Bais Yaacov of Spring Valley v. Alloy, Inc.,* 936

F.Supp.2d 272, 283 (S.D.N.Y. 2013) ("the fact that the recipient of the fax is not the one paying

for the product" does not take the fax outside the TCPA); *Bais Yaacov of Spring Valley v.*

7

*Richmond, The American International University in London,* 13cv4564, 2014 WL 4626230 (S.D.N.Y. Sept. 16, 2014) (defendant university faxed literature to high school for purpose of getting students to attend free seminar promoting defendant's academic programs; court held it was an advertisement for TCPA purposes even though the students and not the high school would pay tuition).

27.     Faxes sent for the purpose of inducing the recipient to enter into a business relationship for mutual profit are covered by the TCPA. *Brodsky v. HumanaDental Ins. Co.,* 10 C 3233, 2014 WL 2780089, at *7 (N.D. Ill. June 12, 2014), reconsideration denied, 2014 WL 4813147 (N.D.Ill., Sept. 29, 2014) (insurer sent faxes to insurance wholesalers urging them to include the defendant's dental plans and vision plans among the products they sell to consumers and argued that the faxes were not advertisements because they did not propose selling anything to the recipients; court held that the faxes were covered because they were "open invitations to do business with Humana"); *Magic, Inc. v. 127 High Street, Inc.,* 14 C 4344, 2014 WL 6806941 (N.D.Ill. Dec. 2, 2014).

28.     Defendant Scion Dental, Inc., either negligently or wilfully violated the rights of plaintiff and other recipients in sending the faxes.

29.     Plaintiff had no prior relationship with defendant and had not authorized the sending of fax advertisements to plaintiff.

30.     On information and belief, the fax attached hereto was sent as part of a mass broadcasting of faxes. It promoted a series of 30 webinars, each of which had room for 100 participants, so it was necessarily sent to well in excess of 3,000 persons. It is generic, not addressed to any specific person.

31.     The fax does not contain an "opt out" notice that complies with 47 U.S.C. §227.

32.     The TCPA provides for affirmative defenses of consent or an established business

relationship.  Both defenses are conditioned on the provision of an opt out notice that complies

with the TCPA.  *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013); *Nack v. Walburg*, 715 F.3d 680

(8th Cir. 2013).

33.     On information and belief, defendant has transmitted similar unsolicited fax

advertisements to at least 40 other persons in Illinois.

34.     There is no reasonable means for plaintiff or other recipients of defendant's

unsolicited advertising faxes to avoid receiving illegal faxes.  Fax machines must be left on and

ready to receive the urgent communications authorized by their owners.

### COUNT I – TCPA

35.     Plaintiff incorporates ¶¶ 1-34.

36.     The TCPA makes unlawful the "use of any telephone facsimile machine,

computer or other device to send an unsolicited advertisement to a telephone facsimile machine

..." 47 U.S.C. §227(b)(1)(C).

37.     The TCPA,  47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court
of a State, bring in an appropriate court of that State–**

> **(A)  an action based on a violation of this subsection or the regulations
> prescribed under this subsection to enjoin such violation,**

> **(B)  an action to recover for actual monetary loss from such a
> violation, or to receive $500 in damages for each such violation,
> whichever is greater, or**

**(C)  both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

38.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.  Furthermore, plaintiff's statutory right of privacy was invaded.

39.     Plaintiff and each class member is entitled to statutory damages.

40.     Defendant violated the TCPA even if its actions were only negligent.

41.     Defendant should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

42.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of defendant Scion Dental, Inc., promoting its goods or services for sale (d) which did not contain a compliant opt out notice.  By "compliant opt out notice" is meant one (i) on the first page of the fax (ii) that states that the recipient may make a request to the sender not to send any future unsolicited advertisements to a telephone facsimile machine (iii) that states that failure to comply, within the shortest reasonable time, as determined by the Federal Communications Commission, is unlawful; (iv) that provides instructions on how to submit an opt out request and (v) that  includes  a domestic contact telephone and facsimile machine number and a cost-free mechanism for the recipient to transmit such a request to the sender that permit a request to be made at any time on any day of the week.

43. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

44. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

      a.     Whether defendant engaged in a pattern of sending unsolicited fax advertisements;

      b.     The manner in which defendant compiled or obtained its list of fax numbers;

      c.     Whether defendant thereby violated the TCPA;

45. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

46. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

47. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

48. Numerous courts have certified class actions under the TCPA. *Holtzman v. Turza,* 08 C 2014, 2009 WL 3334909 (N.D.Ill. Oct. 14, 2009), *aff'd in part, rev'd in part,*

11

*vacated in part,* 728 F.3d 682 (7th Cir. 2013); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.* 2015 IL 118644, 48 N.E.3d 1060; *American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540, 544 (6th Cir. 2014); *In re Sandusky Wellness Center, LLC*, 570 Fed.Appx. 437, 437 (6th Cir. 2014); *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016); *Sadowski v. Med1 Online, LLC,* 07 C 2973, 2008 WL 2224892 (N.D.Ill. May 27, 2008); *CE Design Ltd. v. Cy's Crabhouse North, Inc.,* 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.,* 679 F.Supp.2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Laboratory, Inc.,* 10 C 1315, 2010 WL 4074379 (N.D.Ill. Oct. 12, 2010); *Hinman v. M&M Rental Center, Inc.,* 545 F.Supp.2d 802 (N.D.Ill. 2008); *Clearbrook v. Rooflifters, LLC,* 08 C 3276, 2010 U.S.Dist. LEXIS 72902 (N.D.Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communications, Inc.,* 08 C 4521, 2010 WL 744262 (N.D.Ill. Feb. 25, 2010); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La.App. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.,* 992 So.2d 510 (La.App. 2008); *Lampkin v. GGH, Inc.,* 146 P.3d 847 (Ok.App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,* 203 Ariz. 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young,* 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.,* 293 Kan. 285, 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns, Inc.,* 306 S.W.3d 577 (Mo.App. 2010); *Lindsay Transmission, LLC v. Office Depot, Inc.,* 4:12-CV-221 (CEJ), 2013 WL 275568 (E.D.Mo. Feb. 24, 2013).

49.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

12

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

    a.    Actual damages;

    b.    Statutory damages;

    c.    An injunction against the further transmission of unsolicited fax advertising;

    d.    Costs of suit;

    e.    Such other or further relief as the Court deems just and proper.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

50.    Plaintiff incorporates ¶¶ 1-34.

51.    Defendant engaged in unfair acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

52.    Unsolicited fax advertising is contrary to the TCPA and also Illinois law. 720 ILCS 5/26-3(b) makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

53.    Defendant engaged in an unfair practice and an unfair method of competition by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of their advertising.

54.    Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

55.    Defendant engaged in such conduct in the course of trade and commerce.

56.    Defendant's conduct caused recipients of their advertising to bear the cost thereof.

13

This gave defendant an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail.  For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting.  The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink.  "Receiving a junk fax is like  getting junk mail with the postage due".   Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

57.    Defendant's shifting of advertising costs to plaintiff and the class members in this manner makes such practice unfair.  In addition, defendant's conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

58.    Defendant should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

59.    Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, (c) were sent faxes by or on behalf of defendant Scion Dental, Inc., promoting its goods or services for sale (d) which did not contain a compliant opt out notice.  By "compliant opt out notice" is meant one (i) on the first page of the fax (ii) that states that the recipient may make a request to the sender not to send any future unsolicited advertisements to a telephone facsimile machine (iii) that states that failure to comply, within the shortest reasonable time, as determined by the Federal Communications Commission, is unlawful; (iv) that provides instructions on how to submit an opt out request and (v)  that includes  a domestic contact telephone and facsimile machine number and a cost-free mechanism

14

for the recipient to transmit such a request to the sender that permit a request to be made at any time on any day of the week.

60.     The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

61.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

> a.     Whether defendant engaged in a pattern of sending unsolicited fax advertisements;
>
> b.     Whether defendant thereby engaged in unfair acts and practices, in violation of the ICFA.

62.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

63.     Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

64.     A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

65.     Management of this class action is likely to present significantly fewer difficulties

that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

a. Appropriate damages;

b. An injunction against the further transmission of unsolicited fax advertising;

c. Attorney's fees, litigation expenses and costs of suit;

d. Such other or further relief as the Court deems just and proper.

## COUNT III – CONVERSION

66. Plaintiff incorporates ¶¶ 1-34.

67. By sending plaintiff and the class members unsolicited faxes, defendant converted to its own use ink or toner and paper belonging to plaintiff and the class members.

68. Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

69. By sending the unsolicited faxes, defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

70. Defendant knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

71. Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose. Plaintiff and each class member thereby

16

suffered damages as a result of receipt of the unsolicited faxes.

72.     Defendant should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

73.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five years prior to the filing of this action, (c) were sent faxes by or on behalf of defendant Scion Dental, Inc., promoting its goods or services for sale (d) which did not contain a compliant opt out notice.  By "compliant opt out notice" is meant one (i) on the first page of the fax (ii) that states that the recipient may make a request to the sender not to send any future unsolicited advertisements to a telephone facsimile machine (iii) that states that failure to comply, within the shortest reasonable time, as determined by the Federal Communications Commission, is unlawful; (iv) that provides instructions on how to submit an opt out request and (v)  that includes  a domestic contact telephone and facsimile machine number and a cost-free mechanism for the recipient to transmit such a request to the sender that permit a request to be made at any time on any day of the week.

74.     The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

75.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

        a.     Whether defendant engaged in a pattern of sending unsolicited fax advertisements;

      b.     Whether defendant thereby converted the property of plaintiff.

76.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

77.    Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

78.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

79.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

        WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

      a.     Appropriate damages;

      b.     An injunction against the further transmission of unsolicited fax advertising;

      c.     Costs of suit;

      d.     Such other or further relief as the Court deems just and proper.

## COUNT IV – TRESPASS TO CHATTELS

80.    Plaintiff incorporates ¶¶ 1-34.

81.     Plaintiff and the class members were entitled to possession of the equipment they used to receive faxes.

82.     Defendant's sending plaintiff and the class members unsolicited faxes interfered with their use of the receiving equipment and constitutes a trespass to such equipment. *Chair King v. Houston Cellular*, 95cv1066, 1995 WL 1693093 at *2 (S.D. Tex. Nov. 7, 1995) (denying a motion to dismiss with respect to plaintiff's trespass to chattels claim for unsolicited faxes), vacated on jurisdictional grounds 131 F.3d 507 (5th Cir. 1997).

83.     Defendant acted either intentionally or negligently in engaging in such conduct.

84.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes.

85.     Defendant should be enjoined from continuing trespasses.

## CLASS ALLEGATIONS

86.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five years prior to the filing of this action,  (c) were sent faxes by or on behalf of defendant Scion Dental, Inc., promoting its goods or services for sale (d) which did not contain a compliant opt out notice.  By "compliant opt out notice" is meant one (i) on the first page of the fax (ii) that states that the recipient may make a request to the sender not to send any future unsolicited advertisements to a telephone facsimile machine (iii) that states that failure to comply, within the shortest reasonable time, as determined by the Federal Communications Commission, is unlawful; (iv) that provides instructions on how to submit an opt out request and (v)  that includes  a domestic contact telephone and facsimile machine number and a cost-free mechanism

for the recipient to transmit such a request to the sender that permit a request to be made at any time on any day of the week.

87. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

88. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

      a.    Whether defendant engaged in a pattern of sending unsolicited fax advertisements;

      b.    Whether defendant thereby committed a trespass to chattels.

89. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

90. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

91. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

92. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

a.   Appropriate damages;

b.   An injunction against the further transmission of unsolicited fax advertising;

c.   Costs of suit;

d.   Such other or further relief as the Court deems just and proper.

<u>/s/ Daniel A. Edelman</u>
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Dulijaza Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


<u>/s/ Daniel A. Edelman</u>
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\33585\Pleading\1st Amended Complaint DAE_Pleading.WPD

22

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel A. Edelman, hereby certify that on July 20, 2017, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system, which caused to be served a true and accurate copy of such filing via email upon all counsel on record.

<u>/s/ Daniel A. Edelman</u>
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Dulijaza Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)