**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JAMES L. ORRINGTON, II, D.D.S., P.C., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **CASE NO. 17-CV-00884** |
| SCION DENTAL, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

**SCION'S MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

Defendant Scion Dental, Inc. ("Scion") moves to dismiss the First Amended Complaint in its entirety for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Notwithstanding clear guidance from this Court, Plaintiff James L. Orrington, II, D.D.S., P.C. ("Orrington") still fails to adequately allege a claim under the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. Orrington's strained attempt to allege that the fax at issue is "advertising" is convoluted, speculative and implausible.

The new complaint does nothing to alter this Court's prior, express findings based on the actual content of the fax that (1) "the fax on its face is not an overt advertisement—instead it seeks to inform recipients about updates to Scion's services and processes via a free webinar that requires no registration"; and (2) "the fax itself fail[s] to plausibly suggest that the fax was a pretext to an advertisement." Dkt. 27, Court's Memorandum Opinion and Order dated July 6, 2017, dismissing Plaintiff's original Complaint ("7/6/17 Dismissal"), at 9. Count I, therefore, must be dismissed.

Further, Scion moves for dismissal of Counts II-IV, which raise claims under Illinois state law. Given that Count I fails, the Court should again decline to exercise supplemental jurisdiction over these Illinois state law claims. *See* 7/6/17 Dismissal at 9. As a wholly independent matter,

Counts II-IV should also be dismissed because they fail based on the doctrine of *de minimis non curat lex*, and because Orrington has failed to allege the essential elements of these claims.[1]

## PROCEDURAL BACKGROUND

Orrington filed its Complaint on February 2, 2017, asserting federal and state law claims—individually, and on behalf of various alleged classes—arising out of a fax sent July 7, 2016. Dkt. 1 ("Complaint"). Count I of the Complaint alleged a violation of the TCPA based on a single fax, which was attached to the Complaint. *See* Complaint, ¶¶ 21-27 & Ex. A. Counts II-IV of the Complaint alleged claims under state law: the Illinois Consumer Fraud Act, *id.*, ¶¶ 36-51 (Count II); common law conversion, *id.*, ¶¶ 52-65 (Count III); and trespass to chattels, *id.*, ¶¶ 66-78 (Count IV). Scion timely moved to dismiss the Complaint in its entirety. *See* Dkt. 16.

Following briefing (Dkt. 16, 22, 23), the Court found that Exhibit A to the Complaint, the fax at issue, "on its face is not an overt advertisement—instead, it seeks to inform recipients about updates to Scion's services and processes via a free webinar that requires no registration," and "itself fail[s] to plausibly suggest that [it] was a pretext to an advertisement." 7/6/17 Dismissal at 9. The Court also found Orrington had failed to adequately allege the fax was pretext to advertising at the webinar, or indeed "'anything other than a transactional communication' sent to update Scion's clients on the services and features available to him." *Id.*, citing *Physicians HealthSource, Inc. v. MultiPlan Svcs. Corp.*, No. 12-11693-GAO, 2013 WL 5299134, *2 (D. Mass. Sept. 18, 2013). The Court dismissed Count I, along with Counts II-IV (the pendent state law claims), but granted Orrington leave to amend. *Id.* at 9.

---

[1] This brief focuses solely on Count I, the newly pleaded TCPA claim. Orrington's First Amended Complaint made no changes to Counts II-IV, the state law claims, and Scion's motion to dismiss these same counts has been fully briefed. *See* Dkt. 16 at 11-15; Dkt. 22 at 9-18; and Dkt. 23 at 8-10. In the event the Court does not dismiss Count I, Scion relies on this prior briefing, and asks the Court to dismiss Counts II-IV based on the additional defects identified therein.

Orrington filed its First Amended Complaint ("FAC") on July 20, 2017. Dkt. 28. The FAC is based on the same fax as the original Complaint. *Compare* Dkt. 1 (Complaint) with Dkt. 28 (FAC) & Exs. A & B. Exhibit 1 to this motion is a red-line showing Orrington's amendments to the original Complaint. As shown, the FAC made *no* material amendments within any of the counts (¶¶ 21-78) of the original Complaint. *See* Exhibit 1 hereto. What's different is that Orrington has added a series of paragraphs to the "Facts" section of the FAC, ostensibly for the purpose of alleging that the fax at issue—already found *not* to be an "advertisement" or a "pretext for advertising" on its face—was nevertheless a *pretext* for advertising. *Id.* & FAC, ¶¶ 12-18, 20-27, 30. None of this new material plausibly alleges pretext for advertising, however, and Scion again moves to dismiss.

## LEGAL STANDARD

On this motion, the court "accept[s] all well-pleaded facts as true and draw[s] reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). "Detailed factual allegations" are not required, but "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory allegations do not suffice:

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . .

*Twombly*, 550 U.S. at 555 (internal citations omitted). Instead, stating "'a claim to relief that is plausible on its face' . . . requires sufficient factual allegations to permit the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556, 570). "Purely legal conclusions

3

are insufficient," and "'[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.'" *Id.*

Moreover, the plaintiff must allege "'more than a sheer possibility that a defendant has acted unlawfully.'" *Engel*, 710 F.3d at 709 (quoting *Iqbal*, 556 U.S. at 678). "'[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" *Id.* (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). Dismissal with prejudice is appropriate when the deficiencies in a pleading cannot be cured by amendment. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (leave to amend need not be granted "if it is clear that any amendment would be futile"); *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) (proposed repleading would be futile if claims show "inability to survive a motion to dismiss").

## ARGUMENT

As this Court has determined, the fax at issue here "on its face is not an overt advertisement" that might even potentially trigger liability under the TCPA. 7/16/17 Dismissal at 9. As the Court has determined, the content of the fax also fails to "plausibly suggest" that it is pretext to an advertisement. *Id.* To state a claim under the TCPA, therefore, Orrington must plausibly allege that this fax, neither an "advertisement" nor "pretext to an advertisement" on its face, is nevertheless and in fact a *pretext* for advertising—i.e., that Scion actually used the webinar, or intended to use it, to sell some product or service to Orrington. 7/6/17 Dismissal at 5-9. Under *Twombly* and *Iqbal*, moreover, this allegation must be *plausible*, i.e., made with "sufficient *factual* allegations to permit the court to draw a *reasonable* inference that the defendant is liable for the misconduct alleged." *Engel*, 710 F.3d at 709 (emphasis added). As this Court found, the allegations in the original Complaint did not accomplish this. 7/6/17 Dismissal at 8-9. Thus, the question now before the Court is a narrow one: Do Orrington's *new* allegations succeed in rising above speculation, labels, conclusions, and legal recitations to allege *facts* sufficient to support a

4

*reasonable* inference that the fax was a pretext for prohibited advertisement? As shown below, they plainly do not.

I. **MOST OF ORRINGTON'S NEW ALLEGATIONS ARE LEGAL ARGUMENT OR FACTUAL ALLEGATIONS THAT ARE IRRELEVANT TO THE QUESTION OF PRETEXT.**

Orrington's new allegations are confined to sixteen paragraphs of the FAC. *See* Exhibit 1 hereto & FAC, ¶¶ 12-18, 20-27, 30. All but two of these new allegations either consist solely of legal argument, so are not assertions of fact at all (*id.* & FAC, ¶¶ 25-27), or say nothing about the purpose of the fax at issue, so are simply not relevant to the question of pretext (*id.* & FAC, ¶¶ 13-18, 20, 22-24, 30).

- Paragraphs 25-27 of the FAC consist solely of legal argument and legal conclusions. They contain no factual allegations that might assist Orrington in plausibly pleading pretext. *Engel* 710 F.3d at 709 ("'Purely legal conclusions are insufficient'") (quoting *Twombly*).

- Paragraph 30 of the FAC, also new material, alleges that more than 3,000 persons received the fax at issue. Even if credited, however, the number of persons receiving the fax has no bearing on whether this fax was a pretext to advertising; therefore, ¶ 30 is also irrelevant to the question of pretext.

- Paragraphs 13-18 of the FAC selectively parrot material from Scion's website. Even if credited, however, they serve to establish general background only about Scion and its business: that it is engaged in the business of administering health benefit plans for insurers and benefits administrators (including companies like United Healthcare) (¶ 13); that it helps *these clients* manage their provider networks (¶ 14); that its services help *these clients* manage their relationship with service providers to reduce costs, improve efficiency, and enhance operational transparency using the Provider Web Portal and underlying Enterprise System (¶ 15); that it is in business to

5

make a profit (¶ 16), and that it encourages *non-client* dental providers to benefit from the tools and services Scion is providing *to its clients* (¶¶ 17-18). These new allegations fail to support the claim that the fax in Exhibit A was a pretext to advertising because they say nothing about the purpose of the fax.

Paragraphs 13-18 fail to support Orrington's claim of pretext for other reasons as well. While Orrington vaguely alleges that Scion offers these services and products "for profit on a commercial basis" (¶ 16), Orrington does not allege that the Provider Web Portal—the only 'product' referenced in the fax—is a commercial product offered for sale to anyone, let alone offered for sale to Orrington or any other dental provider. Orrington does not allege that Scion's Provider Web Portal is anything other than a benefit provided to Scion's clients and, by extension, the participants in these clients' provider networks; indeed, the FAC expressly confirms that the Provider Web Portal is a system Scion provides to dental benefit providers (again, like United Healthcare) as a helpful tool for dentists and patients in their networks. *See* FAC ¶ 18. Orrington nowhere alleges that Scion is offering a product for sale to dentists, and that omission is fatal. *Cf. N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 Fed. Appx. 640 (9th Cir. 2012) (upholding dismissal of junk fax claim where plaintiff failed to allege the specific 'product' referenced in the fax—a business award—was "commercially available" to the plaintiff).

Nothing in paragraphs 13-18 of the FAC, moreover, plausibly suggests that the *purpose* of *this fax* was advertising; that is, "that [Scion] advertised, or planned to advertise, its products or services at" the referenced webinar. 7/6/17 Dismissal at 5 (citation to quoted case omitted). Essentially, Orrington's grab bag of new allegations boils down to a general claim that Scion is in business to make money. As the Court has already held, a claim that "Scion 'derived economic benefit' from the fax is insufficient." 7/6/17 Dismissal at 8. Not every fax sent by a profit-making entity constitutes advertising. The proper test is whether the fax at issue is a pretext to *advertising*.

6

*Id.* at 8-9 (citing cases). And fundamentally, even when taken as true, Plaintiff's claims about Scion's business model and profit motive are just too general to plausibly suggest that Scion sent *this fax* with the intention of using *this webinar* to sell any product or service. The Court previously found that the fax does not show or suggest advertising pretext, 7/6/17 Dismissal at 8, and the FAC does nothing to alter that conclusion.

- Paragraphs 22-24 of the FAC also fail to support Orrington's claim of commercial pretext. These paragraphs describe Scion's alleged "relationships" with providers, but once again they are overly general and not linked in any way to the webinar at issue. These allegations are also wholly speculative; they are not even arguably grounded in Scion's website.[2] For instance, Orrington alleges that "[a] medical provider who signs up with [Scion] both gives and receives consideration for doing so." FAC ¶ 22. This is not only unsupported speculation (and false); it also necessarily lacks foundation because—as newly alleged two paragraphs earlier—Orrington has no business relationship with Scion. *See* FAC ¶ 20. Nowhere, moreover, does the FAC allege that Scion ever sought a business relationship with Orrington. The notion is even contradicted by Orrington's own express allegation that Scion's commercial relationships are with *benefit providers* rather than with dental service providers like itself. *See* FAC ¶¶ 15, 18. Paragraph 23 alleges that dentists may benefit from accessing the Web Portal, but such benefits are derivative of Scion's relationships *with Scion's clients*. Paragraph 24 purports to describe the terms of an alleged "exchange" between Scion and medical providers but, once again, this allegation is belied by Orrington's necessary lack of knowledge on the subject (FAC ¶ 20); contradicted by Orrington's express allegation that Scion's relationships are with benefit providers (FAC ¶¶ 15, 18); and contradicted by Orrington's apparent relationship with United Healthcare.

---

[2] Paragraph 24 of the FAC does quote language from Scion's website, but the language quoted does not actually support, or plausibly relate to, the allegation being made.

As Scion has previously argued, despite the fact that United Healthcare receives top billing on the fax, Orrington makes no mention of United Healthcare whatsoever.[3] Given that Scion has previously called attention to this glaring omission (Dkt. 16 at 4-5), and given that advertising pretext is now the central issue, Orrington's continued silence is remarkable. It necessarily goes to the *plausibility* of Orrington's claim that the free webinar was really an attempt to *sell* it something *it did not already have*. Orrington's allegation of pretext fails to "hold together" in light of its deliberate failure to mention or explain its relationship with United Healthcare, and its many generalized claims having no bearing on whether the fax at issue was a pretext to "advertising." *Swanson*, 614 F.3d at 404.

Obviously, Orrington is pleading very carefully, making general accusations but lacking any actual knowledge of the content or purpose of the webinar. In doing so, moreover, Orrington's edifice is internally inconsistent. It fails to identify what product is being sold. It fails to allege any direct sales relationship between Scion and providers like Orrington. And most critically, it fails to establish a plausible link between these general allegations and the only relevant question on this motion: *the purpose of the specific fax that forms the basis of Orrington's TCPA claim.*

---

[3] Previously, Scion argued that in light of Orrington's apparent participation in United Healthcare's provider network (which the FAC still fails to negate), Orrington failed to sufficiently allege that the fax was "unsolicited." Dkt. 16 at 4; Dkt. 23 at 1. The Court did not address this argument because, it found, the lack of an opt-out notice mooted the issue of consent. 7/6/17 Dismissal at 5 n.2. Scion is not re-arguing the point here, but rather making a different point; namely, that Orrington's renewed failure to make any reference to United Healthcare—the entity most prominently featured on the fax—further shows the strained and disingenuous nature of its complaint, and undermines the plausibility of its claim that Scion was using the fax for marketing purposes.

## II. THE TWO ALLEGATIONS ADDRESSING THE PURPOSE OF THE FAX ARE WHOLLY SPECULATIVE AND CONCLUSORY.

Paring away Orrington's irrelevant factual allegations and its legal conclusions, we are left with just two new paragraphs in the FAC that purport to address the purpose of the fax forming the sole basis of the Complaint. These factual claims are:

> The purpose of the fax is to induce the recipient to enter into a business relationship with Scion Dental, Inc., which Scion Dental, Inc., expects to be mutually profitable for itself and the recipient. [FAC ¶ 12]
>
> The fax at issue (Exhibit A) promoted a webinar at which Scion Dental, Inc. intended to introduce its services to dental practices such as plaintiff, sign them up (the key part of Scion's "network build" service), and induce them to make use of its latest technology (Scion's "[a]utomation of dental benefit claims processing" and "improv[ing] the speed and accuracy of claims processing and lower costs" services), described above. The webinar thus promoted the commercial availability and quality of Scion's products and services. [FAC ¶ 21]

This is the sum total of Orrington's attempt to allege the *pretextual purpose* of a fax that on its face is neither advertising nor pretext to advertising. The effort falls entirely flat.

First and very basically, Orrington does not allege that it attended any webinar offered by Scion; thus, it does not have (and cannot have) any factual basis for alleging what went on in these webinars. Thus, without further analysis, the allegations in the FAC at ¶¶ 12 and 21 are inherently and necessarily speculative.

Second, even if they were not wholly speculative, these new allegations are entirely threadbare and conclusory; they do nothing more than recite the necessary elements of advertising pretext. Paragraph 12 says nothing about a product or service made available for sale at the webinar. It merely alleges that the purpose of the fax was to induce Orrington to enter into a "business relationship" that may be "mutually profitable" in the future. As the Court has already pointed out, the allegation that Scion "derived economic benefit" from the fax is conclusory and

9

insufficient. 7/6/17 Dismissal at 8-9, *citing Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 225 (6th Cir. 2015) ("The fact that the sender might gain an ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation"); *Physicians Healthsource, Inc., supra*, 2013 WL 486207, at *5 ("the inquiry under the TCPA is whether the content of the message is commercial, not what predictions can be made about future economic benefits"). *See also Iqbal*, 556 U.S. at 679 (rejecting "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

Paragraph 21 fails for the same reason. It alleges that Scion "intended to introduce its services to dental practices such as plaintiff, sign them up […], and induce them to make use of its latest technology." An otherwise non-advertisement may be pretextual if it ultimately lures recipients to a presentation like *that*. But here, at best, Orrington has alleged that webinar attendees may enroll in and make use of a benefit offered by Scion *to its clients*, which may translate into some unspecified economic benefit for Scion in the future. That simply does not allege the type of pretext that turns what is otherwise a *non*-advertisement into a TCPA violation—much less does it do so plausibly, as the federal pleading standard requires. *Iqbal*, 556 U.S. at 679. Orrington does *not* allege that Scion asked webinar attendees to buy anything or that it used the webinar to offer any product for sale (another allegation that would be false if made); again, Orrington does not even identify what "product" Scion is selling that is commercially available to Orrington.

The allegations in this case can be readily distinguished from allegations in those junk fax cases where courts have found plausible allegations of advertising pretext under the TCPA. What's entirely lacking here is the "something more" that supported otherwise threadbare allegations of pretext in each of those cases. For instance, in *North Suburban Chiropractic Clinic, Ltd. v. Merck & Co.*, No. 13 C 3113, 2013 WL 5170754 (N.D. Ill. Sept. 13, 2013), an otherwise conclusory

10

allegation of pretext—that the defendant "use[d] the fax advertisements and the seminars as part of its work or operations to market its goods and services"—was made plausible by information on the face of the fax, which directed recipients to the defendant's corporate website to register for the seminar and *stated* that registration for the seminar required the recipient to agree that the defendant could contact them about "product information, site enhancements, special offers, [and] educational opportunities," among other things. *Id.* at *4. These objective indicators on the face of the fax permitted the Court to find the allegation of pretext plausible. *Id.*; 7/6/17 Dismissal at 6 (discussing *North Suburban*).

Similarly, in *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 12 C 4978, 2012 WL 4120506 (N.D. Ill. Sept. 18, 2012), the plaintiff alleged that the fax was part of the defendant's "work or operations to market [its] goods or services." *Id.* at *2. Such a bare bones allegation would be insufficient, but the court found it "*plausible* that Alma promoted its products and services by holding a free seminar" because the *fax itself* required recipients to register on its website or by phone. *Id.* and 7/6/17 Dismissal at 6 (analyzing *Physicians Healthsource*). The fax in this case contains no such requirement. Indeed, as the Court has already found, the fax in this case contains nothing to suggest that the webinar was being used by Scion to "sell" any product, and there is no other indication of any kind—either in the fax or in the FAC—to support this claim.

In *Mussat v. Power Liens, LLC*, No. 13-CV-7853, 2014 WL 3610991 (N.D. Ill. July 21, 2014), the fax solicited contact information from recipients, and on its face contained an offer suggesting the defendant was "seeking to establish a relationship rather than a communication made as part of an ongoing relationship," bolstering what would otherwise have been a conclusory allegation of pretext. *Id.* at *2; 7/6/17 Dismissal at 6 (discussing *Mussat*). *See also Physicians HealthSource, Inc. v. MultiPlan Svcs. Corp.*, *supra*, 2013 WL 5299134 (finding neither advertising nor pretext, and dismissing claim, where fax provided information to medical provider pursuant to

11

an existing account or subscription); 7/6/17 Dismissal at 9 ("Here, . . . the fax on its face . . . seeks to inform recipients about updates to Scion's services and processes via a free webinar that requires no registration. Like in *Multiplan*, Plaintiff has not alleged facts indicating that this fax was 'anything other than a transactional communication' sent to update Scion's clients on the services and features available to him") (citing *MultiPlan*).

The same principle holds in *Addison Automatics, Inc. v. RTC Group, Inc.*, No. 12 C 9869, 2013 WL 3771423 (N.D. Ill. July 16, 2013), in which the court found Addison adequately alleged pretext where the fax itself described commercially available software products to be featured at the training. *Id.* at *3 ("plausibility is heightened by the fact that the fax specifically describes the Microsoft and Intel products the attendees would receive information and training on"). On top of that, in order to register for the seminar, participants had to visit a website further describing these products *and* the customer services offered by the defendants. *Id.* Here, as the Court as correctly noted, the fax directed webinar participants to a neutral site, GoToMeeting.com. *See* 7/6/17 Dismissal at 8 ("the fax at issue in this case did not direct recipients to register for the seminar on a corporate website . . . the fax on its face indicates that recipients did not 'need to register in advance' and could simply join an online meeting discussing updates to the defendant's portal").

Finally, in *Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, No. 14 CV 10127, 2015 WL 2330197 (N.D. Ill. May 14, 2015), the court upheld an allegation of pretext against dismissal where the fax itself "ma[de] plain" that the sender—Olive Garden—"ha[d] available for sale 'fresh salad, warm breadsticks, and [a] soup of the day.'" *Id.* at *3. As in the other cases finding pretext, the allegation of pretext was bolstered by language on the face of the fax.

As best Scion can tell, these five cases—*Merck*, *Alma Lasers*, *Mussat*, *Addison Automatics*, and *Helping Hand*—are the only federal decisions anywhere in the Seventh Circuit upholding an allegation of pretext against dismissal under the TCPA. Tellingly, in each case, an otherwise

threadbare allegation of pretext was made *plausible* by material evidence on the face of the offending fax. Here, there is no equivalent language in the fax to carry Orrington's allegation of pretext over the threshold of plausibility. Indeed, the Court has already specifically found that the fax *lacks* the bolstering qualities present in *Merck* and *Alma Lasers*. *See* 7/6/17 Dismissal at 8. Here, moreover, Orrington's limited allegations of pretext are not bolstered by a request for contact information (*Mussat*); they are not bolstered by a web link to commercial advertising (*Addison*); nor are they bolstered by the "plain" implication of goods for sale (*Helping Hand*).

Orrington has failed to allege *facts* that render its claim of advertising pretext *plausible*, so the Court should dismiss Count I again—and this time with prejudice. Orrington has already been provided one opportunity to amend and, in its second attempt, has fared no better. Orrington has demonstrated that the deficiencies in its pleading cannot be cured by amendment, making amendment futile and dismissal with prejudice appropriate. *Bogie*, 705 F.3d at 608; *Garcia*, 24 F.3d at 970.

## **CONCLUSION**

For the reasons set forth above, Orrington's First Amended Complaint must be dismissed in its entirety. Counts II-IV, Orrington's state law claims, must be dismissed with Count I for jurisdictional reasons, and independently, for the reasons stated in Scion's briefs in support of its motion to dismiss the original Complaint. *See* Dkt. 16, 23. And Count I still fails to state a TCPA claim because Orrington still fails to plausibly allege that the fax in Exhibit A is an "unsolicited advertisement"—either on its face, as the Court has ruled, or because it is pretext to commercial advertising. Fundamentally, Orrington's allegations do not plausibly suggest that Scion was using or intended to use the webinar to advertise any product or service commercially available to Orrington.

DATED: August 24, 2017.

                                                  SCION DENTAL, INC.

                              By: */s/ James E. Goldschmidt*
                                      *One of Its Attorneys*

James E. Goldschmidt (admitted *pro hac vice*)
Quarles & Brady LLP
411 E. Wisconsin Avenue, Suite 2400
Milwaukee, Wisconsin 53202
Telephone: (414) 277-5000
Facsimile: (414) 271-3552
james.goldschmidt@quarles.com

Steven V. Hunter (ARDC #6277695)
Quarles & Brady LLP
300 North LaSalle Street, Suite 4000
Chicago, Illinois 60654
Telephone: (312) 715-5000
Facsimile: (312) 715-5155
steven.hunter@quarles.com