# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES L ORRINGTON, II, D.D.S., P.C., on behalf of himself and the class members defined herein, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 17-CV-00884 |
| v. | ) ) | Hon. Amy J. St. Eve |
| SCION DENTAL, INC., and JOHN DOES 1-10, | ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On July 20, 2017, Plaintiff James Orrington ("Orrington") brought the present Amended Complaint against Scion Dental, Inc. ("Scion") and John Does 1-10, collectively "Defendants," alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Illinois Consumer Fraud Act 815 ILCS 505/2 ("ICFA"), and Illinois common law. Before the Court is Scion's motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) [29]. For the following reasons, the Court grants in part and denies in part Scion's motion to dismiss.

## **PROCEDURAL BACKGROUND**

On June 30, 2017, the Court dismissed Plaintiff's initial Complaint without prejudice. The Court found that while Plaintiff had sufficiently alleged that the fax in question was unsolicited because it did not contain an "opt out" notice, Plaintiff's allegations and the fax itself failed to plausibly suggest that the fax was a pretext to an advertisement, as required to state a

claim under the TCPA. (R. 27, June 7, 2017 Opinion.) Plaintiff has since filed an Amended Complaint, which includes additional allegations, described below.

## BACKGROUND

Scion is a Delaware corporation that maintains its principal office in Menomonee Falls, Wisconsin. (R. 28, Am. Compl. ¶ 4.) Scion's registered agent is Registered Agent Solutions, Inc., of Madison, Wisconsin. (*Id.*) John Does 1-10 are natural or artificial persons that were involved in the sending of the facsimile ("fax") advertisements described below. (*Id.* ¶ 5.) Plaintiff is a dental office located in the Northern District of Illinois, where it maintains telephone fax equipment. (*Id.* ¶ 3.)

On July 7, 2016, Plaintiff received an unsolicited fax message on its fax machine inviting Plaintiff to attend an online webinar. (*Id.* ¶ 9; Ex. A, Fax Message.) Plaintiff alleges that Scion is responsible for sending or causing the sending of the fax. (Am. Compl. ¶ 11.) Plaintiff alleges that Scion's goal in sending the fax was to induce the recipient to enter into a business relationship with Scion, which Scion expected to be mutually profitable for itself and the recipient. (*Id.* ¶ 12.) Scion is engaged in the business of administering health benefit plans and providing electronic communications between (1) medical providers, like Plaintiff, (2) insurance companies, benefit plans, and government agencies, (3) and patients. (*Id.* ¶ 13.) Scion's website explains that it provides integrated network management platforms that result in streamlined claims processing and a resulting "significant cost reduction and competitive advantage" for its clients, who are able to service multiple healthcare providers. (*Id.* ¶¶ 14-15.) Scion claims to have "industry-leading functionality, especially in the area of provider and member self-service web portals." (*Id.* ¶ 18.) Plaintiff alleges that, to be profitable, Scion must offer its services to and sign up as many medical providers as possible and induce them to use its latest software and

2

technology. (*Id.* ¶ 17.) Accordingly, Scion must seek to recruit dentists to enter into business relationships. (*Id.* ¶ 19.) Recruiting dentists, as well as healthcare providers, builds Scion's network, and results in Scion developing a broader and more effective network. (*Id.* ¶¶ 17-19.)

Plaintiff had no prior relationship with Scion before receiving the fax and Plaintiff had not authorized the sending of fax advertisements. (*Id*. ¶¶ 20, 29.) Plaintiff alleges that the fax itself promoted a webinar at which Scion intended to introduce its services to dental practices, sign them up to Scion's platform, and induce them to use Scion's latest software and technology. (*Id.* ¶ 21.) Put differently, the webinar described in the fax promoted the commercial availability and quality of Scion's products and services, which would result in streamlined claim processing and access to more patients. (*Id.* ¶¶ 21-23.) In exchange for this streamlined processing, medical providers agree to Scion's cost-containment practices, which are in turn appealing to Scion's healthcare insurance provider clients. (*Id.* ¶ 24.) In short, Plaintiff alleges that the fax was an advertisement because Scion intended it to induce the recipient medical providers to enter into a business relationship with Scion, who sent the fax, for mutual profit, even though, in some cases, the patient, insurance company, benefits plan, or governmental agency might ultimately pay Scion. (*Id.* ¶¶ 20-25.)

Plaintiff alleges, on information and belief, that Scion sent the generic fax as part of a mass mailing and notes that it promoted a series of 30 webinars, each of which had capacity for 100 participants, indicating Scion likely sent it to many medical practices. (*Id.* ¶ 30.) The fax does not contain an "opt out" notice that complies with the TCPA. (*Id.* ¶ 31.) Plaintiff alleges that there were no reasonable means for it to avoid receiving Scion's unsolicited faxes because its fax machines must remain in operation in order to receive other, legitimate fax communications. (*Id.* ¶ 34.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). When ruling on motions to dismiss, courts may also consider documents attached to the pleadings without converting the motion to dismiss into a motion summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); Fed. R. Civ. P. 10(c). Because Plaintiff attaches a photocopy of the fax message to the Complaint and this document is central to its claim, the Court may consider this attachment in ruling on the present motion.

## ANALYSIS

**I.     Count I—TCPA**

Plaintiff alleges that Scion's unsolicited fax violated the TCPA, which prohibits any person from sending unsolicited fax advertisements, unless one of several exceptions applies. *Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 542 (7th Cir. 2017). As noted above, the Court has already found that, under Seventh Circuit precedent, the fax at issue here was unsolicited. Scion argues, as it did in its first motion to dismiss, that the Court should dismiss Plaintiff's TCPA claims because Plaintiff has failed to adequately allege that the fax, which offers a free training webinar regarding United Healthcare's web portal to dental providers in United Healthcare's network, was an advertisement.[1]

As the Court explained in its first Opinion, the TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(5). "Congress has not spoken directly on the issue of whether advertisements for free services can be unsolicited advertisements under the TCPA." *GM Sign, Inc. v. MFG.com, Inc.*, No. 08 C 7106, 2009 WL 1137751, at *2 (N.D. Ill. Apr. 24, 2009). Thus, courts within this district have accepted the FCC's construction of the statute, which provides that faxes "that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition." *Id.* (quoting *In re Rules and Reg. Implementing the Tel. Consumer Prot. Act of 1991 and the Junk Fax Prevention Act of 2005,* 21 F.C.C.R. 3787, 3814 (Apr. 6, 2006)). Although the FCC's rules "could be read to categorize all faxes promoting

---

[1] Scion does not make any arguments regarding Plaintiff's state law claims in its renewed motion to dismiss, however, it incorporates its arguments from its first motion to dismiss, which the Court did not address because it refused to exercise supplemental jurisdiction over those claims.

free seminars as unsolicited advertisements," courts typically require plaintiffs to show that the fax has a commercial pretext—i.e., "that the defendant advertised, or planned to advertise, its products or services at the seminar." *Bais Yaakov of Spring Valley v. Richmond, the Am. Int'l Univ. in London, Inc.,* No. 13–CV–4564 CS, 2014 WL 4626230, at *3 (S.D.N.Y. Sept. 16, 2014) (citation omitted).

The Court explained that several courts have found that faxes promoting seminars are advertisements if they have a commercial pretext. *See, e.g.*, *N. Suburban Chiropractic Clinic, Ltd. v. Merck & Co.*, No. 13 C 3113, 2013 WL 5170754, at *1-2 (N.D. Ill. Sept. 13, 2013) (finding that drug company's fax inviting recipients to webinar for health care professionals "may have been a pretext to market its goods" in part because participants had to register on company's corporate website); *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 12 C 4978, 2012 WL 4120506, at *2 (N.D. Ill. Sept. 18, 2012) (finding plaintiff plausibly alleged that fax promoting a free seminar on medical techniques was part of the defendant's "work or operations to market [its] goods or services"); *Mussat v. Power Liens, LLC*, No. 13-CV-7853, 2014 WL 3610991, at *2 (N.D. Ill. July 21, 2014) (finding fax promoting seminar on company's services was advertisement because plaintiff alleged it was "part of a marketing campaign to sign up physicians for a preferred listing on defendant's website in exchange for a monthly fee").

The Court also explained that, in contrast, courts have found that faxes inviting recipients to free seminars offering information about the defendants' services are not advertisements as long as they do not promote or sell those services. *See, e.g.*, *Phillip Long Dang, D.C., P.C. v. XLHealth Corp.*, No. 109-CV-1076-RWS, 2011 WL 553826, at *4 (N.D. Ga. Feb. 7, 2011) (PPO's fax alerting non-PPO-participating recipients to free seminar in which they could learn about the defendants' billing processes was not an advertisement because PPO was not seeking

6

to sell insurance); *Physicians HealthSource, Inc. v. MultiPlan Servs., Corp.*, No. CIV.A. 12-11693-GAO, 2013 WL 5299134, at *2 (D. Mass. Sept. 18, 2013) (PPO's fax to a PPO member was not advertisement because it did not sell goods or services); *Phillips Randolph Enters., LLC. v. Adler–Weiner Research Chi., Inc.*, 526 F. Supp. 2d 851, 852–53 (N.D. Ill. 2007) (fax inviting recipients to participate in research discussion was not advertisement because recipients had to be "pre-screened" before participating in the program).

With this case law in mind, the Court found that in its initial Complaint, Plaintiff failed to sufficiently allege that the fax at issue was an advertisement or a pretext for an advertisement. Specifically, the Court found that the fax did not on its face advertise any services or products, and more importantly, Plaintiff's conclusory allegation that the Scion "derived economic benefit" did not provide sufficient factual detail as to the way in which Scion intended to market its goods or services at the webinar or obtain a commercial benefit via the webinar. In its Amended Complaint, however, Plaintiff addressed those deficiencies by providing several new, specific allegations that make the connection between the webinar described in the fax and Scion's business model and explain how Scion received a commercial benefit from providing webinars like that promoted in the fax. Specifically, Plaintiff's Amended Complaint contains the following new allegations:

- Scion's goal was to induce the recipient to enter into a business relationship with Scion, which Scion expected to be mutually profitable. (Am. Compl. ¶ 12.)

- Scion administers health benefit plans and provides a communications platform between (1) medical providers, like Plaintiff, (2) insurance companies, benefit plans, and government agencies, (3) and patients. (*Id.* ¶ 13.)

- Scion provides integrated network management platforms that result in streamlined claims processing and a resulting "significant cost reduction and competitive advantage" for its clients. (*Id.* ¶¶ 14-15.)

7

- Scion claims to have "industry-leading functionality, especially in the area of provider and member self-service web portals." (*Id.* ¶ 18.)

- Scion's business model requires that it offer its services to as many medical providers as possible and induce them to use its latest software. (*Id.* ¶ 17.)

- Scion must seek to recruit dentists to use Scion's product because recruiting dentists, as well as healthcare providers, builds Scion's network, and results in Scion developing a broader and more effective network. (*Id.* ¶¶ 17-19.)

- The fax at issue promoted a webinar at which Scion intended to introduce its services to dental practices, sign them up to Scion's platform, and induce them to use Scion's latest software and technology. (*Id.* ¶ 21.)

- Put differently, the webinar described in the fax promoted the commercial availability and quality of Scion's products and services, which would result in streamlined claim processing and access to more patients. (*Id.* ¶¶ 21-23.)

- In exchange for this streamlined processing, medical providers agree to Scion's cost-containment practices, which are in turn appealing to Scion's healthcare insurance provider clients. (*Id.* ¶ 24.)

Scion contends that these new allegations are irrelevant because they merely quote its website and fail to show a commercial pretext, but that argument is unpersuasive at this stage of the litigation. The new allegations go well beyond Plaintiff's conclusory allegation in its initial Complaint that Scion derived some unknown economic benefit from the fax and the webinar, and instead, the allegations provide important details about Scion's business model and how the webinar is part of Scion's commercial enterprise. Specifically, when viewing the Amended Complaint in the light most favorable to Plaintiff, the allegations demonstrate that the webinar referenced in the fax was critical to Scion's business model and commercial activities because it provided an opportunity for Scion to demonstrate its services to medical providers that would potentially use Scion's platforms either as clients or in their communications with healthcare insurance companies. Plaintiff's, and other dentists', familiarity with Scions' platform and technology services was critical to Scion's business operations because Scion's value derives

8

from its streamlined services for medical providers, patients, and healthcare insurance providers. Scion planned to use the webinar to both sign up new medical providers to its platform and to introduce them to the features of that platform. Viewing these allegations in the light most favorable to Plaintiff and making all inferences in Plaintiff's favor, the webinar was directly related to Scion's commercial activities and thus, Plaintiff has sufficiently alleged, at this stage, that the fax was commercial in nature.

As noted above, several courts have denied motions to dismiss in similar cases where the faxes in question referenced seminars relating to the defendant's work or operations to market its services and where those services were available to the recipients of the fax. *See, e.g.*, *Merck & Co.*, 2013 WL 5170754, at *1-2 (finding that drug company's faxed invite to a free seminar was commercial because it was part of defendant's work or operations to market its goods or services); *Alma Lasers*, 2012 WL 4120506, at *2 (finding that although fax itself did not indicate intent to advertise, plaintiff plausibly alleged that free seminar described in fax was part of defendant's "work or operations to market [its] goods or services"); *Sadowski v. OCO Biomedical, Inc.*, No. 08 C 3225, 2008 WL 5082992, at *2 (N.D. Ill. Nov. 25, 2008) (finding that fax promoting seminar was commercial in nature because it promoted defendant's services and purported to improve recipient's profitability); *St. Louis Heart Ctr., Inc. v. Caremark, L.L.C.*, No. 4:12CV2151 TCM, 2013 WL 9988795, at *3 (E.D. Mo. Apr. 19, 2013) (finding fax was commercial even though it did not explicitly offer goods or services for sale but invited recipients to seminar describing defendant's services and products).

Here, as in the cited cases, Plaintiff has sufficiently alleged, at this stage, that Scion's fax was commercial in nature and thus qualifies as an advertisement under the TCPA. Accordingly, the Court denies Scion's motion to dismiss Plaintiff's TCPA claim.

9

**II.     State Law Claims**

Scion does not make any arguments regarding Plaintiff's state law claims in its renewed motion to dismiss. It does, however, incorporate its arguments from its first motion to dismiss, which the Court did not address at the time because it declined to exercise supplemental jurisdiction over Plaintiff's state law claims having dismissed Plaintiff's TCPA claim. Plaintiff argues that Scion exceeded the briefing page limit by referring back to these arguments, but the Court will consider Scion's initial arguments regarding the state law claims, as well as Plaintiff's responses to those arguments from the first round of briefing, because Plaintiff has not amended its state law claims and the core allegations relating to those claims remain unchanged in Plaintiff's Amended Complaint.

In three separate counts, Plaintiff has alleged that Defendant violated the Illinois Consumer Fraud Act and that Defendant is liable for conversion and trespass to chattels under Illinois common law. The Court addresses each count in turn.

**A. Count II—Illinois Consumer Fraud Act ("ICFA")**

In Count II, Plaintiff alleges that Scion violated the ICFA by sending its unsolicited fax. Specifically, Plaintiff claims that sending the fax represented an unfair method of business competition because it allowed Scion to shift the cost of mass advertising to the recipients of the fax in a way that is impossible to achieve with a lawful, direct mail campaign.

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citation and internal quotation marks omitted). "To state a claim under the ICFA, Plaintiffs must allege five elements: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for

10

plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) the damages were proximately caused by the defendant's deception." *Able Home Health, LLC v. Onsite Healthcare, Inc., S.C.*, No. 16-CV-8219, 2017 WL 2152429, at *4 (N.D. Ill. May 17, 2017) (citation omitted). "The element of actual damages 'requires that the plaintiff suffer actual pecuniary loss.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (citation omitted).

A plaintiff may allege either deceptive or unfair conduct (or both) under ICFA. *Siegel*, 612 F.3d at 935; *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012). For a business practice to be considered unfair, the Court considers "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (Ill. 2002). A plaintiff does not need to satisfy all three criteria to support a finding of unfairness. *Id.* at 418. "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (citation and internal quotation marks omitted). "[W]hether a practice is unfair depends on a case-by-case analysis." *Siegel*, 612 F.3d at 935. An ICFA claim for unfair practices need only satisfy Rule 8(a). *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

Here, Scion argues that the Court should dismiss Plaintiff's ICFA claim (1) under the *de minimis* doctrine because the loss of toner and paper from an unsolicited fax was only trivial damage, and (2) because Plaintiff failed to sufficiently allege the element of unfairness as required under the ICFA. While Plaintiff argues that Scion's fax was immoral and unfair

11

because it disadvantaged lawful advertisers and inflicted substantial, if incremental, damage on recipients of the fax, this argument is unavailing. Plaintiff's ICFA claim fails under both the *de minimis* doctrine and the *Robinson* unfairness elements.

First, as the Court found in *Savanna Grouip, Inc. v. Truan*, No. 10 C 7995, 2011 WL 703622, at *3 (N.D. Ill. Feb. 22, 2011), a conversion claim for a single, unsolicited fax is not actionable because the damages resulting from the alleged conversion of the fax machine, toner, and paper are "unquestionably *de minimis*." In *Savanna*, the Court explained that any damages associated with receipt of an unsolicited fax were "negligible from the onset of the lawsuit" and "any argument that the [ ] class action members' *de minimis* damages may be aggregated is misplaced because cumulative allegations of a putative class cannot be used to prop up an otherwise trivial claim that is unable to stand on its own." *Id.* (citation and internal quotation omitted). The Court also noted that the plaintiff's TCPA claim would remedy any alleged *de minimis* losses associated with the plaintiff's conversion claim. *Id.* (citing *Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns, Inc.*, 443 F.Supp.2d 976, 980 (N.D. Ill. 2006) (conversion cause of action surplusage to federal claim); *see also Brandt v. Board of Educ. of City of Chi.,* 480 F.3d 460, 465 (7th Cir. 2007) (damages that are "minuscule to the point of nonexistent" are *de minimis* ); *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.,* 633 F.Supp.2d 610, 613 (N.D. Ill. 2009) ("actual damages from the conversion of the paper and toner necessary to print an unsolicited fax advertisement 'are minuscule, *i.e.,* pennies per plaintiff'") (citation omitted).

Plaintiff's ICFA claim similarly fails under the *Robinson* factors. While courts applying the ICFA "largely agree that sending unsolicited fax advertisements offends public policy," courts are divided "over whether *Robinson's* second and third factors are satisfied by the receipt

of a single unsolicited fax. *Able*, 2017 WL 2152429, at *4 (quoting *Stonecrafters.*, 633 F. Supp. 2d 610, 616 (N.D. Ill. 2009)). Here, in line with its *de minimis* analysis above, the Court is persuaded by "those courts that have found the receipt of a single unsolicited two-page fax—costing a couple of pennies worth of toner and paper—neither "oppressive" nor the cause of "substantial injury" in violation of ICFA." *Able*, 2017 WL 2152429, at *4. Simply put, "[t]he improper use of one piece of paper, a small amount of toner, and a few seconds of an employee's time is not oppressive conduct, nor does it fit within the definitions of any of the other terms." *Stonecrafters*, 633 F. Supp. 2d at 616–17; *see also Mussat*, 2014 WL 3610991, at *3 ("one-page fax cannot be said to burden [Plaintiff] to an oppressive level" and "[o]ne or two sheets of paper, the minimal toner, and the few seconds of a person's time expended in response to the unsolicited fax do not amount to a substantial injury"); *G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.*, 871 F. Supp. 2d 763, 770 (N.D. Ill. 2012) ("Improperly interfering with one piece of [Plaintiff's] paper, a tiny amount of its toner, and a trivial amount of its employees' time is not oppressive conduct."); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08 C 5959, 2010 WL 276701, at *4 (N.D. Ill. Jan. 15, 2010) ("The only burden placed on [Plaintiff] was to throw the fax in the trash. This deed can hardly be classified as 'unreasonable.'"). As the court explained in *Able*, assuming a loss of 2 cents per page for each one-page fax, the class would have to consist of several thousand before the "alleged harm plausibly reaches even $100," and by any standard, that is not a "substantial injury." 2017 WL 2152429, at *5.

Accordingly, Plaintiff has failed to state a claim that the receipt of Defendant's allegedly unsolicited fax violates the unfairness prong of ICFA or that the damages associated with its claim are anything but *de minimis*. The Court grants Scion's motion to dismiss Plaintiff's ICFA claim (Count II).

### B. Count III—Conversion

In Count III, Plaintiff alleges that by sending the unsolicited fax, Scion converted to its own use the ink, toner, and paper belonging entirely to Plaintiff and other recipients of the fax. To survive a motion to dismiss its conversion claim, Plaintiff must allege (1) an unauthorized and wrongful assumption of control, dominion, or ownership by Scion over its property; (2) its right to the property; (3) its right to immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property. *Able*, N2017 WL 2152429, at *5; *see also In re Karavidas*, 999 N.E.2d 296, 310 (Ill. 2013).

Scion argues that the Court should dismiss Plaintiff's conversion claim (1) under the *de minimis* doctrine because the loss of toner and paper from an unsolicited fax was only trivial damage, (2) because Plaintiff failed to allege any demand, and (3) because it does not allege any losses distinct from the TCPA claim so the conversion action is "mere surplusage." Here, regardless of whether Plaintiff sufficiently alleged a demand, Plaintiff's conversion claim, like its ICFA claim, fails because the damages alleged are *de minimis*.

As the Court discussed above, "any damages from the ink, toner, and paper in connection with this [one]-page fax are plainly *de minimis*." *Able*, 2017 WL 2152429, at *6 (dismissing conversion claim relating to unsolicited fax); *see also Stonecrafters*, 633 F. Supp. 2d at 613 ("the ancient maxim *de minimis non curat lex* might well have been coined for the occasion in which a conversion claim is brought based solely on the loss of paper and toner consumed during the generation of a one-page unsolicited fax advertisement."); *G.M. Sign*, 871 F. Supp. 2d at 767–68 (same); *Paldo Sign*, 2010 WL 276701, at *3 (same); *Sturdy v. Medtrak Educ. Servs. LLC*, 2014 WL 2727200, at *5 (C.D. Ill. June 16, 2014) (same); *Garrett v. Rangle Dental Lab.*, 2010 WL 3034709, at *1 (N.D. Ill. Aug. 3, 2010) (same); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 2009

WL 4679477, at *3 (N.D. Ill. Dec. 1, 2009) (same). Here, like in the cited cases, any damages from the ink, toner, and paper used in connection with a single, one-page fax are *de minimis* and do not support a conversion claim.[2]

Accordingly, the Court grants Scion's motion to dismiss Plaintiff's conversion claim (Count III).

### C. Count IV—Trespass to Chattels

In Count IV, Plaintiff alleges that Scion's unsolicited fax interfered with Plaintiff's use of the receiving equipment and thus constitutes a trespass to such equipment. A trespass to chattels requires "[a]n injury to or interference with possession, with or without physical force, to personal property." *Able*, 2017 WL 2152429, at *7 (citation and internal quotation marks omitted). Trespass to chattels can occur by "intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Id.* (citation and internal quotation marks omitted). "Harm to the personal property or diminution of its quality, condition, or value as a result of a defendant's use can also result in liability." *Id.* Further, causation and damages are elements of a trespass to chattel claim. *Id.* Trespass to chattels it thus "on the same spectrum" as conversion and differs "only with respect to the extent of interference with the property owner's rights." *G. Neil Garrett, D.D.S., P.C. v. New Albertson's, Inc.*, 2014 WL 2198242, at *5 (N.D. Ill. May 27, 2014).

---

[2] Plaintiff argues that if the Court rejects its conversion claim as *de minimis*, the Court will "overrule the determination of both Congress and the Illinois legislature to prohibit junk faxing." This argument is unavailing. As the court stated in *Able*, "[i]n no way does the Court 'overrule the determination of Congress and the Illinois legislature in reaching this conclusion. The viability of a common law conversation claim has no bearing on Plaintiff's TCPA claim." 2017 WL 2152429, at *6 n. 5 (N.D. Ill. May 17, 2017). Similarly, the Illinois criminal statute relating to unsolicited faxes—720 Ill. Comp. Stat. Ann. 5/26-3—does not provide a private right of action to recipients of unwanted faxes nor does it "render[] unavailable the *de minimis* maxim in conversation cases." *Id.*

Plaintiff's trespass to chattels claim, which Plaintiff did not support in its briefing with any case law relating to unsolicited faxes in this Circuit, also fails. As an initial matter, Plaintiff's conclusory allegation that it "suffered damages" is insufficient because Plaintiff has not alleged "that its fax machine was harmed in any way or the machine's quality, condition, or value diminished as a result of receiving this fax." *Able*, 2017 WL 2152429, at *7. Additionally, even if the Court assumed the existence of some damages here, the "fleeting interference" caused by the transmission of an unsolicited fax also fails to state a claim under the *de minimis* doctrine. *Id.* Put simply, any purported damage here would be nothing "more than a few pennies" and thus, Plaintiff's allegations cannot support a trespass to chattels claim. *Id.* (dismissing unsolicited fax trespass to chattels claim under *de minimis* doctrine); *see also G. Neil*, 2014 WL 2198242, at *5 (same); *Sturdy v. Medtrak Educ. Servs. LLC*, No. 13-CV-3350, 2014 WL 2727200, at *5 (C.D. Ill. June 16, 2014) (same).

Accordingly, the Court grants Scion's motion to dismiss Plaintiff's trespass to chattels claim (Count IV).

## CONCLUSION

For these reasons, the Court grants in part and denies in part Scion's Rule 12(b)(6) motion to dismiss.

**Dated:** November 20, 2017

        **ENTERED**

        */s/ Amy J. St. Eve*
        _____
        **AMY J. ST. EVE**
        **United States District Court Judge**