# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES L. ORRINGTON, II, D.D.S, P.C., on behalf of plaintiff and the class members defined herein | ) ) ) ) No. 17 CV 884 |
| Plaintiff, | ) Judge John J. Tharp, Jr. |
| v. | ) |
| SCION DENTAL, INC. and JOHN DOES 1-10, | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

James L. Orrington, II, D.D.S., P.C., individually and on behalf of the class members defined herein, alleges that the defendant, Scion Dental, Inc., sent a fax in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Orrington alleges that the fax constitutes an "unsolicited advertisement" as defined by the TCPA. 47 U.S.C. § 227(a)(4). In a previous order, the Court granted Scion's first FRCP 12(b)(6) motion to dismiss for failure to state a claim. After Orrington filed an amended complaint, the Court granted in part and denied in part Scion's second 12(b)(6) motion to dismiss for failure to state a claim. Before the court is Scion's motion for summary judgment under FRCP 56(a) for the one surviving claim of the first amended complaint. For the reasons detailed below, the motion is granted.

## BACKGROUND

Orrington is a dental provider. Scion's business consists of processing and paying dental claims on behalf of insurance company clients. Orrington joined a provider network organized by CAREington, a third-party company not involved in the current litigation. CAREington then

leased the network to UnitedHealthCare ("UHC"), which is one of Scion's clients. Orrington and other dental providers participating in one of the networks established by Scion's clients have access to Scion's Provider Web Portal ("Portal"), which allows the providers to submit claims to Scion. The Portal, however, is not the exclusive means of claim submission to Scion, and providers are free to send in claims in other ways if they so choose.

On July 7, 2016, Orrington received a fax containing both UHC's and Scion's logos. The one-page fax detailed a series of free online training opportunities, or webinars, relating to a recent update to the Portal. The fax provided instructions for how to attend one of the webinars, as well as additional information concerning the new features of the update. The fax did not contain any instructions for opting out of future communications.

Both parties agree that the webinars consisted solely of training with respect to use of the Portal. Scion did not offer any products or services for purchase at the webinars, track who attended, collect any contact information from participants, or follow up with attendees. In addition, Scion's marketing group was not involved with the creation or delivery of the webinar. The webinar leaders also did not discuss pricing for access to the Portal, which is not available for purchase by anyone. In fact, Scion does not sell *anything* to dental providers and never has—its clientele consists of insurers, not providers.

Orrington argues that Scion generally must keep its providers happy and that the Portal helps it do so. Moreover, Orrington alleges that Scion's contract with UHC requires promotion of the Portal for their "mutual commercial benefit." Pl.'s Resp. to Mot. for Summ. J., p. at 1. ECF No. 74. Consequently, Orrington believes the fax to have been an unsolicited advertisement in violation of the TCPA.

**DISCUSSION**

The Federal Rules of Civil Procedure dictate that courts should grant summary judgment when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). For nonmoving parties to prevail in motions for summary judgment, they must "set forth specific facts showing that there is a genuine issue for trial." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006) (internal citations omitted). Nonmoving parties must present enough evidence to support a favorable jury verdict; a mere "scintilla" of evidence in their favor is insufficient. *Id.*

Congress enacted the TCPA to protect consumers against unwanted mass marketing by telephone and fax. Under § 227(b)(1)(C) of the act, no person may "use any telephone facsimile machine, computer, or other device to send . . . an unsolicited advertisement." Thus, the key issues in this case are whether the fax in question was unsolicited and whether it constitutes an advertisement. The TCPA defines an unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission. . ." 47 U.S.C. § 227(a)(5). The Court previously ruled that Scion's fax was unsolicited because it lacked an opt-out notice. Though the legal landscape as to that ruling has changed significantly in the interim, Scion has not sought to revisit that ruling in light of the new developments.[1] The sole issue presented by Scion's

---

[1] Relying on *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013), the Court previously determined in its analysis of Scion's first motion to dismiss that the fax in question was unsolicited because it contained neither an opt-out notice nor instructions to allow recipients to stop receiving future faxes. Mem. Op. and Order, p. 4, ECF No. 27. See *Turza*, 728 F.3d at 683 ("Even when the Act permits fax ads—as it does to persons who have consented to receive them, or to those who have established business relations with the sender—the fax must tell the recipient how to stop receiving future messages."). This Court held that, notwithstanding the D.C. Circuit's decision in *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017), which held "that the FCC's 2006 Solicited Fax Rule is unlawful to the extent that it requires opt-out notices on solicited faxes," *Turza*'s holding remained binding on district courts in this Circuit until and unless the Seventh Circuit says otherwise. In *Brodsky v. HumanaDental Ins. Co.*, 910 F.3d 285, 289-90 (7th Cir. 2018), the Seventh Circuit expressly considered whether *Bais Yaakov* is

summary judgment motion is whether the fax in question constituted an "advertisement" within the meaning of the TCPA.

As explained in the Court's prior opinion, when, as in this case, the "fax on its face is not an overt advertisement," courts in this district have typically then looked to whether the fax is a pretext to an advertisement. Mem. Op. and Order, p. 9, ECF 27; *see, e.g., N. Suburban Chiropractic Clinic, Ltd. v. Merk & Co.*, No. 13-CV-3113, 2013 WL 5170754 (N.D. Ill. Sept. 13, 2013) (finding it plausible that a fax for a free webcast could be an advertisement because webcast attendance required registration on the sender's website, which in turn requested permission from registrants to contact them about the sender's products); *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 12-CV-4978, 2012 WL 4120506 (N.D. Ill. Sept. 18, 2012) (denying the defendant's motion to dismiss because of the possibility that the free seminar promoted on the fax could serve as a type of bait-and-switch in which the defendant promoted its good or services). Courts in other districts have found no advertising pretext for faxes relaying information about free seminars so long as those seminars do not sell or promote commercial products or services.

---

binding in this Circuit under the Hobbs Act, 28 U.S.C. § 2342, but declined to decide the issue definitively. Nevertheless, the *Brodsky* court acknowledged that *Bais Yaakov* had "drained [the Solicited Fax Rule] of a great deal of force." *Id*. at 290. Further, the Court of Appeals expressly held that the TCPA itself—as distinguished from implementing regulations like the Solicited Fax Rule—does not require opt-out notice on solicited faxes. That holding is in considerable tension with *Turza*, given *Turza*'s exclusive reliance on the statute itself for its statement that even solicited faxes require an opt-out notice. And though *Brodsky* does not definitively sound the death knell of the Solicited Fax Rule in this Circuit, it appears that the coup de grâce may nevertheless have been delivered—by the FCC itself. In November 2018, the FCC eliminated the Solicited Fax Rule and did so with some retroactive effect, as it dismissed as moot all pending applications for retroactive waivers. See FCC Order, DA 18-1159 (available at https://docs.fcc.gov/public/attachments/DA-18-1159A1.pdf). Scion has not argued that the Court's prior ruling that the fax must be deemed unsolicited should be revisited, however, so the Court need not fully explore the implications of the FCC's elimination of the Solicited Fax Rule. That is particularly so since reversing course would not change the outcome here. Whether solicited or not, the fax in question was not an advertisement.

*See, e.g.*, *Phillip Long Dang, D.C., P.C. v. XLHealth Corp.*, No. 109-CV-1076-RWS, 2011 WL 553826 (N.D. Ga. Feb. 7, 2011) (determining that there was no advertising pretext with respect to a fax containing information about free insurance seminars in which no insurance was sold and no commercial promotion took place).

Consequently, the Court granted Scion's first motion to dismiss because Orrington's initial complaint did not allege facts sufficient to plausibly allege that the fax was a pretext to an advertisement. Then, after Orrington filed an amended complaint containing specific allegations that Scion intended to use the free webinar as a bait-and-switch, the Court denied Scion's second motion to dismiss with respect to the TCPA claim. By allowing the TCPA claim to move forward, the Court afforded Orrington the opportunity to develop a factual record capable of demonstrating that the fax was a pretext to an advertisement.

As a preliminary matter, Orrington challenges the view that it must, in the absence of reference to a commercially available product or service (*i.e.*, overt advertising), show that Scion's fax was a pretext to expose Scion to advertising. Orrington maintains that the Court should adopt a per se rule requiring all faxes that promote free goods and services, including seminars, to be considered unsolicited advertisements. Orrington bases its position largely on a 2006 Federal Communications Commission Order and a recent decision issued by the Fourth Circuit Court of Appeals.[2] Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25,967, 25,973 (May 3, 2006) (the "2006 FCC Rule");

---

[2] Scion posits that this argument is "moot" because it was not raised during briefing for either of the previous motions to dismiss. Def.'s Reply in Support of Mot. for Summ. J. p. 8, ECF No. 79. While Orrington's argument could have been raised in connection with the prior motions, there is no requirement to raise every available legal argument in opposition to a motion to dismiss. To the contrary, complaints are not required to plead legal theories of any kind and a claim survives a motion to dismiss upon a demonstration that it is plausible under any single legal theory. It might be risky to hold one's fire in opposing a motion to dismiss, but it is not waiver.

*Calrton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459 (4th Cir. 2018). The relevant portion of the 2006 FCC Rule reads:

> [F]acsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition. In many instances, "free" seminars serve as a pretext to advertise commercial products and services. Similarly, "free" publications are often part of an overall marketing campaign to sell property, goods, or services. For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the "quality of any property, goods, or services." Therefore, facsimile communications regarding such free goods and services, if not purely "transactional," would require the sender to obtain the recipient's permission beforehand, in the absence of an [established business relationship].

The 2006 FCC Rule at 25973. Orrington advocates for a plain language application of the 2006 FCC Rule to the current case and argues that the Court should in turn find the fax to be an advertisement under a per se rule. To support its position, Orrington relies largely on *PDR Network*, in which the Fourth Circuit interpreted the 2006 FCC Rule to mandate a per se rule in this context.[3] *PDR Network*, 883 F.3d at 467.

Unlike the Fourth Circuit, the Seventh Circuit has not yet weighed in on this issue. Still, when presented with similar arguments in the past, most courts in this district have declined to implement a per se rule. *See, e.g., Gerber v. MedSolutions, Inc.*, 17 C 5553 p. 4, ECF No. 52 (N.D. Ill. May 15, 2018) (Gettleman, J.) ("Until the Seventh Circuit provides some guidance, this court

---

[3] Of note, the U.S. Supreme Court recently vacated the Fourth Circuit's opinion and remanded the case to the lower court for further consideration of two "preliminary issues" relating to the Administrative Orders Review Act, more commonly known as the Hobbs Act, 28 U.S.C. § 2342 *et seq. PDR Network, LLC et al v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055-56 (2019). The Hobbs Act precludes district courts from disregarding administrative orders like the 2006 FCC Rule. *PDR Network*, 883 F.3d at 464. The Supreme Court has not, to this point, determined whether the 2006 FCC Rule promulgates a per se rule or whether any such rule is binding on district courts.

remains convinced that the proper interpretation of the 2006 Rule is that there must be a commercial nexus to the sender's business for a fax promoting a "free" seminar to be considered an advertisement"). The Court agrees with the *Gerber* court's determination and finds that a plain reading of the 2006 FCC Rule leads to the conclusion that there is no per se rule against all unsolicited faxes detailing free goods and services. The fact that the 2006 FCC Rule provides exceptions for both informational and transactional faxes indicates that the rule is, by definition, not per se. Moreover, the Court concludes that Scion's fax concerning a webinar offering training on updated features of the Portal fits squarely within the recognized exceptions to the 2006 Rule.

The first of these exceptions states that "facsimile communications that *contain only information*, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules." 2006 FCC Rule at 25973 (emphasis added). To determine whether a fax is a "bona fide informational communication," the Rule then lays out a variety of factors that the FCC can consider, including the frequency of communication and the recipient(s) of the fax. *Id.* The presence of these types of factors further evidences that there is no per se rule. Moreover, the fax in question is the very type of informational communication envisioned by this exception. Scion distributed the fax to inform providers of the new updates to the Portal. While Orrington is correct that the fax included information regarding a free webinar, it misses the mark in ignoring that the only recipients of the fax were in-network providers who already had access to Scion's Portal and that Portal access is not available for purchase.

Similarly, the fax also falls under the 2006 FCC Rule's transactional notice exception, which states in part that faxes are not advertisements so long as they "notify the recipient of a change in terms or features regarding an account, subscription, membership, loan or comparable ongoing relationship, in which the recipient has already purchased or is currently using the

facsimile sender's product or service." *Id.* Although the facts of this case differ slightly from the examples laid out by the FCC, the recipients of the fax were all members of UHC's provider network, which in turn meant that they had an existing commercial relationship with Scion. And regardless of whether the in-network providers actually used the Portal, they all had access to it. In short, Scion's fax merely notified the in-network recipients of updates to a service to which they already had access and offered the providers training relating to those updates.

To see that the fax in this case falls within these exceptions, let us simplify the scenario by removing Scion for a moment. Imagine UHC sent Orrington a fax saying: "Here is how to submit insurance claims online." That information would not be an advertisement; it would be the delivery of information necessary to give effect to the commercial transaction—the provision of insurance—between UHC and Orrington. As such, it would plainly fall within the informational and transactional communication exceptions to the 2006 Fax Rule. Adding Scion to the mix as the party who provides the instruction on how to submit claims does not change the nature of the communication; it merely changes the identity of who is sending it. What would be an informational, transactional communication between the principals remains an informational, transactional communication when a third party delivers the same information.[4]

---

[4] Orrington also posits that this Court's opinion in *Mussat v. Enclarity Inc.*, illustrates that a showing of pretext is not required for a fax to constitute an advertisement. *Mussat v. Enclarity Inc.*, No. 16-CV-07643, 2018 WL 1156200 (N.D. Ill. Mar. 5, 2018). Although correct on this point, Orrington mischaracterizes that finding. As this Court explained in *Mussat*, no pretext is needed if the fax, like the one in that case, "explicitly mention[s] a commercially available product or service, or express[es] an intent by the defendant to market its products or services." *Id.* at *3. The fax in *Mussat* indicated that the defendant's services were available for purchase by specifically referencing "clients." *Id.* Also, to stop future faxes from arriving, the fax listed a hyperlink to the sender's website that contained, among other things, commercially available products. *Id.* at *2. As a result, the Court determined that "the form fax at issue here, on its face, declares the commercial availability of [the defendant's] services. *Id.* at *4. Scion's fax, unlike the fax in *Mussat*¸ is not an advertisement on its face and Orrington therefore must prove that the fax was an advertising pretext.

Orrington argues alternatively that Scion's fax was a pretext to advertising, but that argument fails for essentially the same reasons. As detailed above and not disputed by Orrington, the fax broadcast the availability of free webinars whose sole purpose was Portal training. There was no commercial element to the webinars; nothing was sold or offered, and Scion did not monetize webinar attendees in any way. *See Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 222-23 (6th Cir. 2015) (concluding that when the good or service detailed in the fax is not available to be bought or sold then the fax is not an advertisement); *Ameriguard, Inc. v. University of Kansas Medical Center Research Institute, Inc.*, No. 06-0369-CV-W-ODS, 2006 WL 1766812 at *1 (W.D. Mo. Dec. 2 2014) ("[The fax] . . . does not announce Defendant is providing or otherwise has available goods, services, or property."). Additionally, the fax recipients already had access to the Portal, which is not available for sale to anyone. In fact, Scion does not sell *anything* to dental providers, who are not a part of Scion's client base.

To rebut these facts, Orrington makes three principal arguments. First, the plaintiff claims that Scion's contract with UHC "requires that Scion create, host, *promote* and maintain a secure web portal to be used by Providers." Pl. Resp. in Opp'n, to Def.'s Mot. for Summ. J., p. 5, ECF No. 74) (emphasis added). Scion's fax, Orrington contends, therefore constituted advertising because its purpose was to fulfill Scion's contractual obligation to promote the Portal. In fact, however, the contract contains no such requirement. While it does require Scion to "create, host, and maintain" the Portal, it does not require Scion to promote the Portal; Orrington has conveniently added the word "promote" where it does not appear. Pl.'s Resp. to Scion's Statement of Undisputed Material Facts, Ex. 1 p. 6, ECF No. 75. Orrington also asserts that "Scion is required to . . . encourage use of [the Portal] under its contract with United." Pl. Resp. in Opp'n, to Def.'s Mot. for Summ. J., p. 5, ECF No. 74. That, too, is a misstatement; the contract does not contain

9

any requirement that Scion encourage the Portal's use or provide training on its features. Orrington cites his statement of additional facts Nos. 73-77 for this proposition, but those statements do not make these assertions; the only Orrington statement of fact that asserts that Scion is contractually obligated to "promote" the Provider Portal is No. 84, and Scion disputed that statement, expressly noting that "Scion's contract with United Healthcare . . . does not require Scion to promote the Provider Web Portal." ECF 78 at 3-4.

Orrington's second assertion is that Scion has a broad requirement to keep in-network providers happy and that the Portal helps it do so. Scion rightfully counters that its compensation received from UHC does not vary in any way based on the Portal, with the exception of the general requirement that it maintain one. In other words, Scion does not receive additional financial compensation for increasing Portal usage among providers. Although the Court does not dispute that Scion is motivated to keep providers happy (such providers being less likely to complain to UHC about its claims processing procedures and making it more likely that UHC will retain Scion as its claims processor), the resulting economic benefit is too vague and undefined to warrant a finding that the fax is a pretext to an advertisement. *See, e.g., Sandusky Wellness Center, LLC* 788 F.3d at 225 ("The fact that the sender might gain an ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation"). Providing good customer service is, of course, intended to help retain existing clients and obtain new ones. Nevertheless, every communication that merely provides good customer service by delivering information that allows customers to use services to which they are already entitled does not constitute an advertisement.

The plaintiff draws an analogy as the basis for its third and final assertion. Orrington contends that the fact that Scion does not sell products or services to dental providers is analogous

10

to cases in which faxes targeted potential intermediary sellers or promoters. *See, e.g., AL and PO Corporation v. Med-Care Diabetic & Medical Supplies, Inc.*, No. 14-CV-1893, 2014 WL 6999593 (N.D. Ill. Dec. 10 2014) (rejecting defendant's argument that complaint should be dismissed because the fax intended to recruit intermediaries to sell the sender's goods and services). According to the plaintiff, Scion's fax still violates the TCPA because the dental providers who received the fax resemble the type of intermediary described in *AL and PO Corporation*. This analogy fails, however, because there is no additional party to which Orrington could market or sell access to the Portal. In other words, Scion cannot be recruiting the plaintiff to be an intermediary because there is no one to whom Orrington could sell access to the Portal—access to the Portal is not something that can be purchased.[5]

In short, the undisputed facts show that Scion processes claims for dentists on behalf of UHC and other insurance providers. It maintains an online Portal through which dentists in the supported networks may submit claims. It trains dentists in the supported networks free of charge and sent a fax advising them of available training on new features of the online system. The fax offered no products or services for sale and provided no information about those who participated in the training sessions. This fax was not an advertisement. It was simply good customer service.

---

[5] Orrington also compares Scion's fax to messages distributed by so-called fax broadcasters, or third-party entities that transmit faxes on behalf of others for a fee. No such entity is involved in this case, so this comparison is inapt. The complaint makes no allegation that Scion was sending a fax to advertise on behalf of someone else, such as UHC.

11

\* \* \*

For the reasons stated above, the Court finds as a matter of law that Scion's fax was not an advertisement as defined by the TCPA. Scion's motion for summary judgment, ECF No. 66, is therefore granted.

Date: October 7, 2019

John J. Tharp, Jr.
United States District Judge